WHIPPLE, J.
 

 |2On June 30, 2008, the defendant, Billy Joe Patton, was charged by grand jury indictment with aggravated kidnapping (count one) and forcible rape (count two), violations of LSA-R.S. 14:44 and LSA-R.S. 14:42.1. On July 14, 2008, the defendant entered a plea of not guilty on both counts. After a trial by jury, on July 15, 2009, the defendant was found guilty as charged. On December 14, 2009, on count one, the defendant was sentenced to life imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence. On count two, the trial court originally sentenced the defendant to forty years imprisonment at hard labor, but after adjudicating the defendant a habitual offender on July 12, 2010, the trial court vacated the sentence, and imposed a sentence of life imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence.
 
 [1]
 

 The defendant now appeals, assigning as error the denial of his right to confront his accuser and cross-examine the analyst who performed DNA testing, and the ineffectiveness of trial counsel for not objecting to analyst testimony regarding another analyst’s report. The counseled brief also requests a review of the record for errors discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence, pursuant to LSA-C.Cr.P. art. 920(2). In a pro se brief filed in this matter,
 
 [2]
 
 the defendant raises
 
 *1214
 
 additional ^assignments of error alleging or challenging the admission of hearsay testimony, prosecutorial misconduct, insufficient evidence, double jeopardy, the propriety of the habitual offender adjudication, the admission of scientific evidence, and ineffective assistance of counsel. For the following reasons, we affirm the convictions and the sentence imposed on count one, vacate the habitual offender adjudication and the enhanced sentenced imposed on count two, and remand for re-sentencing.
 

 STATEMENT OF FACTS
 

 The defendant’s aggravated kidnapping and forcible rape convictions arose from the following circumstances. On February 7, 1987, during the nighttime hours and extending into the early morning hours of February 8th, John Palmer and E.B. (the victim), went out with other friends to college bars in an area called “The Strip” in Lafayette, Louisiana. After the bars closed, Palmer and the victim decided to go to an after-hours club called “Cowgirls.” Both Palmer and the victim consumed alcohol that night. Palmer was driving the victim’s car, with the victim travelling in the vehicle. As Palmer lost control of the vehicle while travelling on 1-10, the vehicle slid off the shoulder of the highway and landed in a ditch. A vehicle described as a dark-colored Firebird or Camaro approached and the male driver/perpetrator offered assistance, agreeing to take Palmer to get a wrecker while the victim waited in her vehicle. After Palmer and the perpetrator drove off, leaving the victim in her vehicle, they pulled over, the perpetrator stated that he had to urinate, and they both exited the vehicle. However, the perpetrator then quickly re-entered his vehicle and drove off, leaving Palmer on a roadside, and headed back in the direction of the location where the victim’s vehicle was stuck.
 

 The perpetrator picked up the victim under the pretense that Palmer needed her to meet him at the next interstate exit because he did not have any cash or a 14credit card for the tow truck. When the victim questioned the driver’s actions as he kept driving past interstate exits, he told her to be quiet. The perpetrator was consuming beer and asked the victim to drink with him, but she refused. The perpetrator then began asking the victim to have sex with him and continued driving, refusing to take the victim to meet Palmer. At some point, the victim passed out, having previously consumed alcohol and having been awake for eight to nine hours.
 

 A Louisiana State Police trooper, Joseph Salvador, III, received and responded to a dispatch concerning a vehicle accident, or a vehicle off the roadway. As he proceeded westbound on 1-10, he received a CB communication regarding a white male, Palmer, who was on foot on the highway. Trooper Salvador located Palmer at approximately 4:00 a.m. and took him back to the victim’s vehicle. When they arrived at the vehicle, the victim was no longer present and the vehicle was locked and abandoned.
 

 When the victim awoke, the perpetrator had pulled off the interstate and into a field. The victim could still hear the interstate traffic. The perpetrator continued to proposition the victim for sex. The victim offered to go to a motel with the driver in an effort to create an opportunity to escape. The driver became irate, started screaming, and told the victim that he was going to have his way. The perpetrator then crossed over the console to the passenger seat, ripped the victim’s shirt off, pulled her pants down, and raped her.
 
 *1215
 
 When the perpetrator exited the vehicle to pull his pants up, the victim got out of the car and started running toward the highway. The perpetrator got back in his car, pulled in front of the victim before she could reach the highway, and forced her back into his vehicle.
 

 As they travelled on the interstate, the victim begged the perpetrator to release her. At approximately 6:00 a.m., the perpetrator drove the victim to Lone Oak Grocery store on LA Highway 73 in Dutehtown and released her. The | ¡^perpetrator threw two twenty-dollar bills at the victim and told her she was in Mississippi and would need the money to get home.
 
 [3]
 
 The victim entered the store and reported the rape to the clerk, who contacted the police. The victim was taken to Riverview Medical Center in Gonzales where a rape examination was conducted. A bruise on the right side of the victim’s neck was noted and vaginal secretions, including viable mobile sperm, were collected and turned over to the sheriffs department with the rest of the sexual assault kit. Palmer and the victim gave statements to the Ascension Parish Sheriffs Office describing the perpetrator and his vehicle, but the witnesses did not select anyone from the photographic lineup viewed at that time. The police were unable to develop a suspect and the file became a cold case. The evidence, consisting of the sexual assault kit, the victim’s clothing, and the two twenty-dollar bills, was sent to the Louisiana State Police Crime Lab. At that time, DNA testing was not available, but serological (substance identification) testing was performed.
 

 In 2004, the Louisiana State Police Crime Lab received state and federal funding for backlogged DNA cases. As a result, the lab outsourced evidence collected in over one thousand cases. Lab personnel sent the evidence collected in this case, including a partial vaginal swab and a portion of a saliva sample from the victim, to Bode Technology Group to conduct DNA analyses, develop DNA profiles, and look for the presence of semen or sperm. At that time, there was still no suspect in this case and no male reference sample was provided. A male profile was obtained from the partial vaginal swab and submitted to the crime lab. After reviewing the report and data from Bode Technology Group, the crime lab generated a report and entered the profile from the unknown person into a national database called Combined DNA Index System (CO-DIS).
 

 LOn January 9, 2007, the crime lab received a letter from the Texas Department of Public Safety, indicating that Texas officials had a match of the perpetrator’s DNA profile with a subject named Billy Joe Patton, the defendant. The Louisiana State Police Crime Lab verified the match, notified the Ascension Parish Sheriffs Office, and instructed them to collect a known reference sample from the defendant for further testing. In March 2007, Detective Chris Moody created a photographic lineup with a current photograph of the defendant, but the victim did not identify anyone as the perpetrator.
 

 Detective Moody obtained a search warrant for the defendant’s DNA and executed the warrant in Texas in July 2007. The buccal swab sample from the defendant was consistent with the DNA profile provided by Bode Technology Group and the sperm sample obtained from the vaginal
 
 *1216
 
 swab of the victim. The victim’s and the defendant’s DNA mixture were detected.
 

 On June 3, 2008, the defendant was located in Alabama and placed under arrest as a fugitive from Ascension Parish and transported to the parish prison. Detective Moody created a second photographic lineup that included an older photograph of the defendant that was more closely related to the time and date of the incident in question. On July 25, 2008, the victim identified the defendant as the perpetrator in the second photographic lineup, and Palmer did the same on June 3, 2009.
 

 COUNSELED ASSIGNMENTS OF ERROR NUMBERS ONE AND TWO
 

 In the first counseled assignment of error, the defendant argues that he was denied a fair trial because DNA evidence was admitted without affording him the opportunity to confront Darryl Oubre, the analyst who performed the testing. The defendant hypothesizes that the test results could have been inaccurate or based on a contaminated sample. The defendant notes that the State called another analyst, Joanie Wilson, who did not supervise or have any knowledge of the samples or |7how the testing was conducted, to read Oubre’s report during the trial. The defendant notes that the State’s witness admitted that the Louisiana State Police Crime Lab did not have an error-reporting procedure. The defendant further notes that none of the State’s witnesses ruled out human error or contamination. The defendant argues that he had a good alibi and that the DNA test was the basis for the convictions. In the second counseled assignment of error, the defendant argues that the trial counsel was ineffective in failing to object when the State called an analyst who did not conduct the DNA testing. The defendant argues that there was no strategic explanation for the failure to object and that the results of the trial would have been different absent the DNA evidence, especially in light of the fact that the eyewitness identifications took place twenty-two years after the offenses occurred. The defendant contends that he is entitled to a new trial.
 
 [4]
 

 A contemporaneous objection is necessary to preserve the issue for appellate review. LSA-C.Cr.P. art. 841 A; LSA-C.E. art. 103 A(l). Additionally, it is well settled that defense counsel must state the basis for his objection when making it and point out the specific error of the trial court. The grounds of the objection must be sufficiently brought to the attention of the trial court to allow it the opportunity to make the proper ruling and correct any claim of prejudice. A defendant is limited on appeal to grounds for an objection articulated at trial. A new basis for objection cannot be raised for the first time on appeal.
 
 State v. Brown,
 
 481 So.2d 679, 686-87 (La.App. 1st Cir.1985),
 
 writ denied,
 
 486 So.2d 747 (La.1986). Herein, the defendant concedes that his trial counsel did not object when the State called Joanie Wilson of the Louisiana State Police Crime | sLab, an expert in the field of forensic DNA analysis, instead of calling Daryl Oubre, the analyst who performed
 
 *1217
 
 the DNA testing at the crime lab. Nonetheless, we elect to consider the defendant’s argument in the context of his claim of ineffective assistance of counsel herein.
 
 See State v. Wilkinson,
 
 99-0803 (La.App. 1st Cir.2/18/00), 754 So.2d 301, 303,
 
 writ denied,
 
 2000-2336 (La.4/20/01), 790 So.2d 631.
 

 As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post conviction relief in the trial court than on appeal. This is because post conviction relief provides the opportunity for a full evidentiary hearing under LSA-C.Cr.P. art. 930.
 
 [5]
 
 However, when the record is sufficient, this court may resolve this issue on direct appeal in the interest of judicial economy.
 
 State v. Lockhart,
 
 629 So.2d 1195, 1207 (La.App. 1st Cir.1993),
 
 writ denied,
 
 94-0050 (La.4/7/94), 635 So.2d 1132.
 

 The claim of ineffective assistance of counsel is to be assessed by the two-part test of
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
 
 State v. Fuller,
 
 454 So.2d 119, 125 n. 9 (La.1984). The defendant must show that counsel’s performance was deficient and that the deficiency prejudiced him. Counsel’s performance is deficient when it can be shown that he made errors so serious that he was not functioning as the “counsel” guaranteed to the defendant by the Sixth Amendment. Counsel’s deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. The defendant must make both showings to prove that counsel was so ineffective as to require reversal.
 
 Strickland,
 
 466 U.S. at 687, 104 S.Ct. at 2064. To carry his burden, the defendant “must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the ^proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.”
 
 Strickland,
 
 466 U.S. at 694, 104 S.Ct. at 2068.
 

 In accordance with the Confrontation Clause of the Sixth Amendment to the U.S. Constitution and Article I, Section 16 of the Louisiana Constitution, in all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him. The Confrontation Clause bars “admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.”
 
 Crawford v. Washington,
 
 541 U.S. 36, 53-54, 124 S.Ct. 1354, 1365, 158 L.Ed.2d 177 (2004). In
 
 Melendez-Diaz v. Massachusetts,
 
 — U.S. -, 129 S.Ct. 2527, 2530-31, 174 L.Ed.2d 314 (2009), the defendant had been charged with distribution of cocaine. To establish the fact that the substance seized was cocaine, the State submitted a laboratory analysis of the substance. The report confirmed that the substance was cocaine and also stated the weight of the substance seized. The Supreme Court found that this laboratory report violated
 
 Crawford,,
 
 as it was offered as prima facie evidence of the crime, with no showing that the analysts who prepared the reports were unavailable.
 
 Melendez-Diaz,
 
 129 S.Ct. at 2542.
 

 In the context of the defendant’s claim of ineffective assistance of counsel herein, we note that allegations of ineffectiveness relating to the choice made by counsel to pursue one line of defense as opposed to another constitute an attack upon a strategy decision made by trial
 
 *1218
 
 counsel.
 
 State v. Allen,
 
 94-1941 (La.App. 1st Cir.11/9/95), 664 So.2d 1264, 1271,
 
 writ denied,
 
 95-2946 (La.3/15/96), 669 So.2d 433. In this case, during cross-examination, the defense counsel specifically asked Wilson if she was the person who actually performed DNA testing at the Louisiana State Police Crime Lab, and Wilson confirmed that she did not do so, noting that Oubre was the analyst for that test. The defense counsel then 11ftbegan questioning Wilson about contamination and negative controls in the lab. During defense counsel’s closing argument, he highlighted to the jury the fact that the State’s witness did not actually perform the testing in arguing that the evidence was not reliable.
 

 The investigation of strategy decisions requires an evidentiary hearing and, therefore, cannot possibly be reviewed on appeal. Further, under our adversary system, once a defendant has the assistance of counsel, the vast array of trial decisions, strategic and tactical, which must be made before and during trial, rests with the accused and his attorney. As previously noted by this court, the fact that a particular strategy is unsuccessful does not establish ineffective assistance of counsel.
 
 State v. Folse,
 
 623 So.2d 59, 71 (La.App. 1st Cir.1993).
 

 Moreover, confrontation errors are subject to a harmless-error analysis.
 
 Delaware v. Van Arsdall,
 
 475 U.S. 673, 680, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986);
 
 State v. Millican,
 
 2003-1065 (La. App. 1st Cir.2/23/04), 874 So.2d 211, 215. Factors to be considered by the reviewing court include: the importance of the testimony in the prosecution’s ease; whether the testimony was cumulative; the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; the extent of cross-examination otherwise permitted; and, of course, the overall strength of the prosecution’s case.
 
 Van Arsdall,
 
 475 U.S. at 684, 106 S.Ct. at 1438;
 
 State v. Witte,
 
 559 So.2d 1321, 1332 (La.1990),
 
 cert. denied,
 
 506 U.S. 880, 113 S.Ct. 231, 121 L.Ed.2d 167 (1992). The verdict may stand if the reviewing court determines that the guilty verdict rendered in the particular trial is surely unattributable to the error.
 
 Sullivan v. Louisiana,
 
 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993).
 

 Herein, the Louisiana State Police Crime Lab outsourced the evidence collected in this case for testing at Bode Technology Group, where a DNA profile for the suspect was developed. Michael Carióla of Bode testified and his report |T1was admitted into evidence. According to Wilson’s unchallenged testimony, the Bode profile was entered into the national database, CODIS, and ultimately matched to the defendant. Oubre’s additional testing and report merely verified and confirmed the predetermined match. Aside from the DNA evidence, both the victim and Palmer positively identified the defendant as the perpetrator in this case. Accordingly, we find that the verdicts in this case were surely unattributable to any alleged error in the admission of the Louisiana State Police Crime Lab’s DNA testing. Moreover, there is no reasonable probability that the result of the proceeding would have been different had the defense counsel objected to the admission of the evidence or required Oubre’s presence for cross-examination.
 
 See State v. Davidson,
 
 44,916 (La.App. 2d Cir.2/10/10), 32 So.3d 290, 297,
 
 writ denied,
 
 2010-0579 (La.10/1/10), 45 So.3d 1096. Thus, the counseled assignments of error are without merit or, otherwise, are not subject to appellate review.
 

 PRO SE ASSIGNMENTS OF ERROR
 

 Ineffective Assistance of Counsel
 

 In the tenth pro se assignment of error, the defendant raises several additional in
 
 *1219
 
 effective-assistance-of-counsel claims based on arguments raised in other pro se assignments of error detailed below. The defendant specifically contends that his trial counsel was ineffective in failing to object to the following: his claims of pros-ecutorial misconduct, the admission of unreliable evidence, and the imposition of an excessive sentence. The defendant further argues that his trial counsel was ineffective in declining to request jury charge instructions on a not-guilty verdict based on alibi evidence, and the lack of criminal general intent for the forcible rape charge based on the victim’s testimony that the suspect was intoxicated. Finally, the defendant argues that his trial counsel was ineffective for |12failure to challenge the validity of his prior theft conviction used to establish his habitual offender status.
 

 As noted above, to successfully assert a claim of ineffective assistance of counsel, the defendant must show that counsel’s performance was deficient and that the deficiency prejudiced him. Regarding the defendant’s claim that his trial counsel was ineffective in declining to request specific jury charge instructions on criminal intent, the record reflects that the jury was fully charged on criminal intent — both specific and general. The trial court informed the jury of the definition of both forms of intent and specifically instructed that “in the absence of qualifying provisions, the term ‘intent’ and ‘intentional’ have reference to general criminal intent.” The trial court also detailed for the jury all of the elements for the charged and responsive offenses. Moreover, the trial court instructed the jury to render not guilty verdicts on each count if the State failed to prove beyond a reasonable doubt that the defendant committed the crimes charged or any of the responsive offenses.
 

 Thus, the defendant has failed to make a showing on either prong (deficient performance or prejudice) sufficient to support a claim of ineffective assistance of counsel regarding his counsel’s lack of a request for a jury charge on a not guilty verdict or general criminal intent. Instead, the record reflects that the jury was appropriately charged on those issues. Thus, we find no merit in pro se assignment of error number ten as to these specific claims. The remaining ineffective-assistance-of-counsel claims will be addressed in the context of the other pro se assignments of error. As noted above, while the failure to raise objections below precludes appellate review
 
 (See
 
 LSA-C.Cr.P. art. 841 A; LSA-C.E. art. 108 A(l)), the defendant’s arguments will be addressed pursuant to the ineffective-assistance-of-counsel claims raised in the tenth pro se assignment of error. As detailed hereafter, we find no merit in the remaining ineffective 1 ^assistance claims. Accordingly, we find no merit in the tenth pro se assignment of error.
 

 Hearsay
 

 In the first pro se assignment of error, the defendant challenges the admission of hearsay statements by State witnesses regarding the positive identification of the defendant as the perpetrator and allegations concerning the incident. The defendant contends that the contested testimony was presented by Detective Moody, retired Detective Falcon, and other police officers, and argues that it was not part of the
 
 res gestae
 
 of the investigation. The defendant further argues that the testimony was inaccurate because the witnesses’ identifications were uncertain and unreliable “due to their drinking and abnormal visibility.”
 

 Hearsay evidence is evidence of an unsworn, out-of-court statement made by a person other than the testifying witness which is introduced for the truth of its content. However, if such a statement is
 
 *1220
 
 offered for any other purpose, then the statement is not hearsay.
 
 State v. Valentine,
 
 464 So.2d 1091, 1093 (La.App. 1st Cir.),
 
 writ denied,
 
 468 So.2d 572 (La.1985).
 

 Article 801D(4) incorporates what was formerly LSA-R.S. 15:447 and 448, known as the
 
 res gestae
 
 exception to the hearsay rule.
 
 [6]
 

 Res gestae
 
 is defined as events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants.
 
 State v. Castleberry,
 
 98-1388 (La.4/13/99), 758 So.2d 749, 765,
 
 cert. denied,
 
 528 U.S. 893, 120 S.Ct. 220, 145 L.Ed.2d 185 (1999). This [^doctrine includes not only spontaneous utterances and declarations made before and after commission of a crime, but also includes testimony of witnesses pertaining to what they heard or observed before, during or after the commission of the crime if the continuous chain of events is evident under the circumstances.
 
 See State v. Castleberry,
 
 758 So.2d at 765. It is possible that a police officer, in explaining his own actions, may refer to statements made to him by other persons, not to prove the truth of the out-of-court statements, but to explain the sequence of events leading to the arrest of the defendant from the viewpoint of the investigating officer.
 
 State v. Broadway,
 
 96-2659 (La.10/19/99), 753 So.2d 801, 808,
 
 cert. denied,
 
 529 U.S. 1056, 120 S.Ct. 1562, 146 L.Ed.2d 466 (2000). While the out-of-court statement may be relevant to the investigating officer’s conduct, and the defendant’s subsequent arrest, the testimony may not be used as an indirect method of bringing before the jury the substance of an out-of-court assertion of the defendant’s guilt that would otherwise be barred by hearsay.
 
 Broadway,
 
 753 So.2d at 809.
 

 The testimony by the police officers herein regarding the identification of the defendant by the victim and Palmer was admitted to explain the sequence of events leading to the defendant’s arrest. Moreover, both the victim and Palmer testified that they positively identified the defendant in a photographic lineup and their signed selection was admitted into evidence. Thus, even assuming,
 
 arguendo,
 
 that the testimony constituted hearsay, it was cumulative and corroborative of Palmer’s and the victim’s testimony. Palmer and the victim were fully cross-examined regarding their identifications of the defendant; thus, the jury was fully aware of their level of certainty. Hence, the guilty verdicts were surely unattributable to any error in the admission of the challenged testimony into evidence.
 
 See State v. Spell,
 
 399 So.2d 551, 556 (La.1981). Accordingly, pro se assignment of error number one also lacks merit.
 

 | ^Additionally, to the extent that the defendant argues in pro se assignment of error number ten that his trial counsel was ineffective for failure to object to the admission of the testimony in question, this claim has no merit. Even assuming a deficiency in performance, the defendant has failed to show how he was prejudiced in this regard.
 

 Prosecutorial Misconduct
 

 In the second pro se assignment of error, the defendant contends that the
 
 *1221
 
 assistant district attorney committed pros-ecutorial misconduct that resulted in an unfair trial. The defendant specifically notes that in the assistant district attorney’s opening and closing arguments, she stated she believed the jury would find the defendant guilty; that the DNA evidence would prove the defendant’s guilt; and that the victim and witness identified the defendant as the perpetrator. The defendant further contends that the assistant district attorney vouched for the credibility of expert opinion and State witnesses. The defendant asserts that the assistant district attorney’s argument contradicted the testimony of the State’s witnesses. The defendant further contends that the assistant district attorney failed to disclose that there were contrary descriptions of the defendant’s car. The defendant argues that the assistant district attorney manipulated the jury into believing that he travelled through Louisiana during February 1987. The defendant contends that the assistant district attorney misconstrued the testimony of defense witness Archie Mesinga, and insinuated incorrect information regarding the defendant’s divorce and the time period in which he was married and living with his wife in Alabama.
 

 In the third pro se assignment of error, the defendant similarly contends that the assistant district attorney committed misconduct in not crediting the testimony of Archie Mesinga. The defendant also argues that the assistant district attorney | ^committed prosecutorial misconduct in discrediting defense alibi witness, Sandra Monk.
 

 Finally, in the fourth pro se assignment of error, the defendant alleges that the assistant district attorney vouched for the accuracy and credibility of the State’s forensic expert. The defendant argues that the forensic expert’s testimony was based on unsupported opinion and improper methodology, including inaccurate information on the frequency ratio of a buccal saliva swab. The defendant further notes that the expert witness could not vouch for the credibility or accuracy of another analyst, and that hearsay statements were introduced in lieu of DNA evidence from Mississippi.
 

 At the outset, we note that the jurisprudence shows that prosecutors are afforded broad latitude in choosing opening and closing arguments and trial tactics.
 
 See e.g. State v. Martin,
 
 539 So.2d 1235, 1240 (La.1989) (closing arguments' referring to “smoke screen” tactics and defense “commi-pinkos” held inarticulate but not improper);
 
 State v. Copeland,
 
 530 So.2d 526, 545 (La.1988),
 
 cert. denied,
 
 489 U.S. 1091, 109 S.Ct. 1558, 103 L.Ed.2d 860 (1989) (prosecutor’s waving a gruesome photo at jury and urging jury to look at it if they become “weak-kneed” during deliberations held not improper).
 

 Louisiana Code of Criminal Procedure article 766 confines the scope of the opening statement by the State to the explanation of the nature of the charge and evidence by which the State expects to prove the charge. Louisiana Code of Criminal Procedure article 774 confines the scope of argument to “evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.” The trial judge has broad discretion in controlling the scope of the opening and closing arguments.
 
 State v. Prestridge,
 
 399 So.2d 564, 580 (La.1981). However, even if the prosecutor exceeds these bounds, the court will not reverse a conviction if not 117“thoroughIy convinced” that the argument influenced the jury and contributed to the verdict.
 
 See State v. Martin,
 
 93-0285 (La.10/17/94), 645 So.2d 190, 200,
 
 cert. denied,
 
 515 U.S. 1105, 115
 
 *1222
 
 S.Ct. 2252, 132 L.Ed.2d 260 (1995);
 
 State v. Jarman,
 
 445 So.2d 1184, 1188 (La.1984);
 
 State v. Dupre,
 
 408 So.2d 1229, 1234 (La.1982).
 

 The comments referred to in the defendant’s pro se brief are not outside the proper scope of opening or closing arguments. Even if we were to find them outside of the proper scope of opening or closing arguments, no relief premised on such comments would be warranted. Here, the defendant was convicted based on substantial testimonial and scientific evidence of guilt, and it does not appear that any prosecutorial comments contributed to the verdicts. Thus, pro se assignments of error numbers two, three, and four lack merit. Further, the ineffective-assistanee-of-counsel claim raised in the tenth pro se assignment of error regarding the lack of contemporaneous objections to the challenged prosecutorial statements fails as well, as we find no deficiency in the trial counsel’s performance and/or prejudice in this regard.
 

 Admission of Scientific Evidence!Chain of Custody
 

 In the ninth pro se assignment of error, the defendant contends that the trial court erred in admitting forensic evidence that was tampered with, causing undue prejudice and an unfair trial. The defendant argues that the record leads to a suspicion of incorrect evidentiary labels and a possibility of a “cross-over” with a planted sample, because the Louisiana State Police Crime Lab sent the samples to other independent laboratories. In support of his claim of tampering, the defendant contends that the record reflects that Detective Falcon and Assistant District Attorney O’Bannon switched out items from evidentiary bags.
 

 The record does not reflect a contemporaneous objection to preserve the above issue for appellate review. LSA-C.Cr.P. art. 841 A; LSA-C.E. art. 103 A(l). | ^Nonetheless, this issue will also be addressed in the context of the defendant’s ineffective assistance of counsel claim raised in the tenth pro se assignment of error.
 

 To be admitted at trial, demonstrative evidence must be identified. This identification can be visual, that is, by testimony at trial that the object exhibited is the one related to the case. Alternatively, the evidence can be identified by a chain of custody, that is, by establishing the custody of the object from the time it was seized to the time it was offered into evidence.
 
 State v. Pittman,
 
 486 So.2d 895, 896 (La.App. 1st Cir.1986). The purpose of the chain-of-custody rule is to prevent evidence from being tampered with or from being lost.
 
 State v. Gaudet,
 
 93-1641 (La.App. 1st Cir.6/24/94), 638 So.2d 1216, 1223,
 
 writ denied,
 
 94-1926 (La.12/16/94), 648 So.2d 386. However, the law does not require that the evidence as to custody eliminate all possibility that the object has been altered. In order to introduce demonstrative evidence, threshold legal requirements are satisfied if the foundation laid establishes that it is more probable than not that the object is the one connected to the case. Lack of positive identification or a defect in the chain of custody goes to the weight of the evidence, rather than to its admissibility. Ultimately, a chain of custody or connexity of the physical evidence is a factual matter for determination by the jury.
 
 State v. Spooner,
 
 550 So.2d 1289, 1304 (La.App. 1st Cir. 1989),
 
 writ denied,
 
 566 So.2d 394 (La.1990).
 

 At the trial, testimony by Monica La-vigne (the Riverview Medical Center emergency room nurse at the time of the offenses), Dr. Vitrano (also of Riverview at the time), and Daniel Falcon (a detective/sergeant with the Ascension Parish
 
 *1223
 
 Sheriff’s Office at the time of the offenses) established that the vaginal swabs taken during the rape examination, the entire kit, and other evidence collected at that time went directly from the medical center to the sheriffs department. Specifically, according to the testimony and lab report, the evidence was released to Detective 11flFalcon at approximately 8:25 a.m. on the day of the exam, February 8, 1987. Falcon specifically testified that he dated and initialed the evidence bag. Falcon delivered the evidence to Officer Paul Robert of the Sheriffs Office, who refrigerated it at the office until he delivered it to the Louisiana State Police Crime Lab on February 10,1987.
 

 The record further shows that on March 10, 2004, the vaginal and saliva samples were sent to Bode Technology Group. Regarding the tracking of the evidence, Michael Carióla of Bode Technology Group testified as follows:
 

 Chain of custody for all of our cases is standard procedure. It’s established the moment it arrives at the building. This was sent via FedEx. The tracking number is recorded. The individual who receives it [and] transports it directly to our evidence, [sic] evidence unit who logs it in. Then they assign a Bode case number which will be used for the internal processing. And all the transfers that go from the evidence to the analyst who conducting [sic] the testing, that’s documented through a chain of custody.
 

 Carióla further noted that there were no tampering issues regarding the evidence in this case.
 

 Based on our review of the connexity foundation laid, the record supports a finding that it is more probable than not that the tested scientific evidence was connected to this case.
 
 [7]
 
 Further, the record reveals no indication of evidence tampering or that the evidence was compromised in any way. For the above reasons, the ninth pro se assignment of error is also meritless. Accordingly, the ineffective assistance of counsel claim in this regard likewise fails, as we find no performance deficiency or prejudice attributable to the lack of objections regarding the admission of the scientific evidence or the chain of custody.
 

 1Sufficiency of the Evidence
 

 In the fifth, sixth, and seventh pro se assignments of error, the defendant raises arguments regarding the sufficiency of the evidence to support the convictions. Specifically, in the fifth assignment of error, the defendant contends that the DNA evidence upon which the jury relied was incomplete and unreliable. The defendant notes that no rarity check was conducted, precluding the use, of the product rule. The defendant notes that the saliva buccal swab evidence was compared to a partial twenty-two year old seminal fluid sample and contends that the record shows that it was not kept under sufficient control for preservation or monitoring. Additionally, he claims there was a lack of logs to establish proper temperature over the twenty-two year period. The defendant further argues that there was no way to determine whether the sample or methodology of the analysis involved distortion. The defendant further argues that the State’s expert witness testified as to the credibility and weight of the evidence, even though she did not conduct the analysis, and despite the fact that DNA evidence does not declare a match, but only the likelihood in statistical terms that the sam-
 
 *1224
 
 pie came from someone other than the suspect. The defendant concludes that it is impossible to obtain a match between a suspect’s seminal fluid and a saliva buccal swab sample.
 

 Regarding the sufficiency of the evidence, in the sixth and seventh pro se assignments of error, the defendant argues that the evidence only supports convictions for simple rape and simple kidnapping. In this regard, the defendant argues that the victim could not remember the incident and was not credible and that there was no evidence of force. The defendant further argues that the victim claimed she was not sure if she could resist or not. The defendant also notes that the victim testified that she voluntarily entered his vehicle, but eventually became uncomfortable and asked the defendant to bring her back to her vehicle and he refused. Additionally, the defendant claims that the evidence is insufficient |g1 because the victim did not initially claim that she was raped. The defendant notes that pursuant to LSA-R.S. 14:43 A(l), simple rape is committed when the sexual intercourse is deemed to be without lawful consent when the victim is incapable of resisting or understanding the nature of the act by reason of a stupor or abnormal condition of mind produced by an intoxicating agent or any cause. The defendant argues that the victim could not remember the incident due to her intoxication, establishing her mental abnormalities and a lack of credibility.
 

 The standard of review for sufficiency of the evidence to support a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime and defendant’s identity as the perpetrator of that crime beyond a reasonable doubt.
 
 See
 
 LSA-C.Cr.P. art. 821;
 
 Jackson v. Virginia,
 
 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979);
 
 State v. Johnson,
 
 461 So.2d 673, 674 (La.App. 1st Cir.1984). When analyzing circumstantial evidence, LSA-R.S. 15:438 provides that the trier of fact must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence.
 
 State v. Graham,
 
 2002-1492 (La.App. 1st Cir.2/14/03), 845 So.2d 416, 420. When a case involves circumstantial evidence and the trier of fact reasonably rejects a hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt.
 
 State v. Moten,
 
 510 So.2d 55, 61 (La.App. 1st Cir.),
 
 writ denied,
 
 514 So.2d 126 (La.1987).
 

 Aggravated kidnapping is the forcible seizing and carrying of any person from one place to another or the imprisoning or forcible secreting of any person with the intent thereby to force the victim to give up anything of value in order to secure a release of the person who is in the offender’s actual or apparent control. LSA-R.S. 14:44(1) & (3). Specific intent is that state of mind which may bej^inferred from the circumstances of the transaction and defendant’s conduct. The trier of fact determines whether the requisite intent is present in a criminal case.
 
 State v. Brown,
 
 2003-1076 (La.App. 1st Cir.12/31/03), 868 So.2d 775, 782,
 
 writ denied,
 
 2004-0269 (La.6/4/04), 876 So.2d 76. The abduction of a victim with the intent to commit rape constitutes an intent to force the victim to give up something of apparent or prospective value.
 
 See State v. Arnold,
 
 548 So.2d 920, 925 (La.1989). The essential elements of the crime of forcible rape under the facts here and as statutorily provided at the time of the offense are anal or vaginal sexual intercourse without the lawful consent of the victim, when the victim is prevented from
 
 *1225
 
 resisting by force or threats of physical ■violence, and the victim reasonably believes resistance would not prevent the rape. LSA-R.S. 14:42.1 A(l).
 

 The victim testified that she initially entered the perpetrator’s vehicle voluntarily. However, when the defendant did not drive onto the next interstate exit to meet Palmer, she asked the defendant for an explanation. The victim was told to be quiet. The victim testified that she believed she was in danger and that the perpetrator was going to kill her. When she asked to go to a motel, the perpetrator began screaming, pulling and ripping the victim’s clothes off, and then raped the victim. According to the victim, she was afraid to resist and fearful of being murdered. The victim immediately reported the incident to the store clerk, Kevin Sanchez and to the police officer who was dispatched to the store, Dean Smith. Sanchez specifically testified that when the victim entered the store, she stated that she had been raped and appeared upset and as though she had been crying. The victim gave written and audiotaped statements to the police consistent with her trial testimony. Sanchez also provided a written statement to the police.
 

 The victim confirmed that she was not pressured or influenced to pick anyone from the photographic lineup. She stated that she looked at the lineup, picked the defendant and informed the police that she was “99 percent” and “pretty Insure.” The victim confirmed that she immediately went to the defendant’s photograph and positively testified that the defendant was the person who abducted and raped her.
 

 Palmer testified that he did not recall having any conversations with the victim about this incident. In 2009, when he was presented with the photographic lineup that included an older photograph of the defendant, his identification of the defendant as the person who picked him up that night was “almost instantaneous.” Palmer was not certain as to how he was able to recognize the individual twenty-two years after the incident took place, but testified that the identification was certain. During cross-examination, Palmer confirmed that he consumed alcohol, but denied using any drugs on the night in question. Palmer also confirmed that he was not pressured or influenced by anyone to choose any or a particular photograph from the photographic lineup. Palmer testified that he was unable to identify the color of the defendant’s vehicle, described as a Camaro or Firebird, because it was dark outside at the time. Documentation obtained by Detective Moody, showing the report of a 1984 lien on a 1979 Chevrolet Camaro owned by the defendant, was also admitted into evidence.
 

 Further, the DNA evidence against the defendant was conclusive. Wilson testified that the probability of finding the same DNA profile from a randomly-selected individual, other than the defendant, was one in 44.6 trillion. Wilson further testified that the lab has checks and balances in their process to make sure that contamination does not occur. She further described their extensive review process and noted that there was no evidence of contamination in this case.
 

 Defense witness Sandra Monk was married to the defendant at the time of the offenses and was pregnant at the time. Monk testified that the defendant could not have been in Louisiana on the date in question because her pregnancy due date was February 2, the baby was born on February 11, and the defendant stayed with lather from that date until February 14. According to Monk, they travelled back and forth from their residence in Alabama to the hospital in Mississippi, and she had a falling accident during her preg
 
 *1226
 
 nancy and had complications. However, she confirmed that she and the defendant did live in Ruston, Louisiana at some point during their marriage and that there were periods of separation before their final divorce, but she could not remember the dates applicable to the separations.
 

 Defense witness Archie Mesinga, an Alabama resident, married Sandra Monk’s sister. Mesinga testified that the defendant was in Alabama at the time of the offenses. He specifically recalled the defendant’s wife being pregnant at the time and stated that she was having complications. Mesinga also testified that the defendant worked with him on an irregular basis in 1987. When specifically asked if the defendant was in Alabama on the morning of February 8, 1987, Mesinga stated, “I can’t swear to it that he was there or that I saw him, you know” adding, “I have no reason to pinpoint that date, you know.”
 

 In
 
 State v. Williams,
 
 2000-981 (La.App. 5th Cir.4/11/01), 786 So.2d 805,
 
 writ denied,
 
 2001-1377 (La.3/28/02), 812 So.2d 646, the victim accompanied the defendant to an isolated area where she became nervous and attempted to leave. The defendant, who was armed with a knife, grabbed the victim, pushed her down on the ground, shoved the knife in her face, threatened to kill her if she screamed, and plunged the knife into the ground next to her head. The defendant then removed the victim’s clothing and raped her. The victim attempted to flee at one point, but the defendant caught her, punched her, and raped her a second time. The Fifth Circuit found sufficient evidence to support the defendant’s forcible rape conviction.
 

 Herein, the verdict rendered against the defendant indicates the jury accepted the identification testimony and DNA evidence offered against the defendant and rejected the testimony offered in his favor. As the trier of fact, the jury was free to 12F¡accept or reject in whole, or in part, the testimony of any witness.
 
 State v. Johnson,
 
 99-0385 (La.App. 1st Cir.11/5/99), 745 So.2d 217, 223,
 
 writ denied,
 
 2000-0829 (La.11/13/00), 774 So.2d 971. On appeal, this court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder’s determination of guilt.
 
 State v. Glynn,
 
 94-0332 (La.App. 1st Cir.4/7/95), 653 So.2d 1288, 1310,
 
 writ denied,
 
 95-1153 (La.10/6/95), 661 So.2d 464. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency.
 
 State v. Lofton,
 
 96-1429 (La. App. 1st Cir.3/27/97), 691 So.2d 1365, 1368,
 
 writ denied,
 
 97-1124 (La.10/17/97), 701 So.2d 1331.
 

 In this case, the victim objected to being driven to another location, and her repeated requests to be taken to meet Palmer were ignored. The defendant took the victim to a place other than Palmer’s location, imprisoned her in his vehicle, and then raped her, forcing her to submit to secure her release, after his taking of something of value from her. Therefore, the elements required to prove aggravated kidnapping under either LSA-R.S. 14:44(1) or (3) were satisfied. Furthermore, the evidence revealed that the victim was “prevented from resisting the act by force ... under circumstances where [she] reasonably believe[d] that such resistance would not prevent the rape.” LSA-R.S. 14:42.1 A(l).
 

 We cannot say that the jury’s determinations were irrational under the facts and circumstances presented to them.
 
 See State v. Ordodi,
 
 2006-0207 (La.11/29/06), 946 So.2d 654, 662. An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for
 
 *1227
 
 that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury.
 
 State v. Calloway,
 
 2007-2306 (La.1/21/09), 1 So.3d 417, 418 (per curiam). After a thorough review |2fiof the record, we are convinced that a rational trier of fact, viewing the evidence presented in this case in the light most favorable to the State, could find that the evidence proved beyond a reasonable doubt, all of the elements of aggravated kidnapping and forcible rape and the defendant’s identity as the perpetrator of those crimes. Thus, we need not determine if the evidence supports a conviction of a responsive offense. We find no merit to pro se assignments of error numbers five, six, and seven.
 

 Double Jeopardy
 

 The sixth pro se assignment of error raises a double jeopardy claim. Specifically, the defendant contends that his forcible rape and aggravated kidnapping convictions constitute a double jeopardy violation. The defendant argues that the offenses constitute one continuing criminal transaction and should have been considered one crime.
 

 A person cannot twice be put in jeopardy for the same offense. U.S. Const. amend. V; La. Const, art. 1, § 15; LSA-C.Cr.P. art. 591;
 
 State v. Knowles,
 
 392 So.2d 651, 654 (La.1980). Louisiana uses both the
 
 “Blockburger
 
 test” and the “same evidence test” in determining whether double jeopardy exists.
 
 State v. Green,
 
 96-0256 (La.App. 1st Cir.12/10/96), 687 So.2d 109, 112. In
 
 Blockburger v. United States,
 
 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), the Supreme Court held that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not. The broader “same evidence” test dictates that if the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a plea of double jeopardy, and a defendant can he placed in jeopardy for only one. This test [27depends on the proof necessary for a conviction, not the evidence that is actually presented at trial.
 
 State v. Steele,
 
 387 So.2d 1175, 1177 (La.1980).
 

 To prove aggravated kidnapping, the State was required to show that the defendant forcibly seized and carried the victim from one place to another, or imprisoned or forcibly secreted the victim, with the intent thereby to force the victim to give up anything of apparent present or prospective value in order to secure a release. LSA-R.S. 14:44(1) & (3). As noted by the Louisiana Supreme Court in
 
 State v. Arnold,
 
 548 So.2d at 925, “the issue to be focused upon is whether the defendant sought to obtain something of value, be it sex or money or loss of simple human dignity, by playing upon the victim’s fear and hope of eventual release in order to gain compliance with his demands.” Thus, to establish the offense of aggravated kidnapping, how or even whether the offender extricates something of value from the victim is statutorily irrelevant, as long as the abduction of the person in the manner described in the statute was done with the intent to obtain something of value in exchange for what the victim perceives is her ultimate release.
 

 To prove the crime of forcible rape, the State was required to establish that the defendant actively desired to commit rape by preventing the victim from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believed that such resistance
 
 *1228
 
 would not have prevented the rape. LSA-R.S. 14:42.1. This crime does not require proof that the victim was seized, imprisoned, or secreted. Thus, each offense requires proof of an additional fact which the other does not. Moreover, the evidence required to support a finding of guilt of one crime would not have supported a conviction of the other. Thus, the defendant’s convictions for aggravated kidnapping and forcible rape do not give rise to a double jeopardy claim.
 
 See State v. Ashley,
 
 44,655 (La.App. 2d Cir 9/23/09), 22 So.3d 1045, 1055-56,
 
 writ denied,
 
 2009-2305 (La.4/23/10), 34 So.3d 271. Pro se assignment of error number six lacks merit.
 

 Habitual Offender Adjudication/Record Review
 

 In the eighth pro se assignment of error, the defendant contends that the sentence imposed by the trial court constituted an illegal violation of LSA-R.S. 15:529.1. Specifically, the defendant contends that the 1980 theft conviction used to establish his habitual offender status was in fact an attempted theft, that a ten-year cleansing period was applicable to the 1980 theft conviction, that the sexual battery conviction was founded on a false allegation, and that a plea agreement making it unlawful to use the prior conviction for multiple billing was breached. Finally, the defendant contends that the State breached its duty and acted with malice in failing to assure that the information it used was authentic and constitutional.
 

 At the outset, we note that there is no merit to the defendant’s contention that the cleansing period in LSA-R.S. 15:529.1_ C prohibits the use of his 1980 theft conviction as a predicate conviction. According to the evidence presented by the State, on September 2, 1980, the defendant pled guilty to theft, was sentenced to five years in the Texas Department of Corrections, and was discharged from probation on October 2, 1985. Because less than five years elapsed between the defendant’s discharge on the theft predicate felony conviction and his commission of the instant felonies in 1987, the five-year cleansing period (applicable in accordance with the law at the time of the instant offenses) did not prohibit the defendant’s adjudication as a habitual felony offender based on his 1980 conviction.
 

 However, although the defendant does not specifically articulate the following, pursuant to the request in the counseled brief and our routine review in accordance with LSA-C.Cr.P. art. 920(2), we have reviewed the record for errors discoverable by a mere inspection of the pleadings and proceedings without 12¡)inspection of the evidence and note the following. Although LSA-R.S. 15:529.1 does not contain a sequential conviction requirement, for sentence enhancement purposes, the subsequent felony must be committed after the predicate conviction or convictions.
 
 State v. Johnson,
 
 2003-2993 (La.10/19/04), 884 So.2d 568, 578-79. Two of the predicate convictions listed in the habitual offender bill of information took place after the 1987 forcible rape offense forming the basis for the instant enhanced conviction.
 
 [8]
 
 Thus, the instant felony was not committed after those predicate convictions and the habitual offender adjudication and enhanced sentence imposed on count two must be vacated.
 

 
 *1229
 
 DECREE
 

 For the above reasons, we affirm the defendant’s convictions and the sentence imposed on count one, but vacate the habitual offender adjudication and enhanced sentence imposed on count two and remand to the trial court for additional proceedings.
 
 See State v. Price,
 
 2005-2514 (La.App. 1st Cir.12/28/06), 952 So.2d 112, 123-25 (en banc),
 
 writ denied,
 
 2007-0130 (La.2/22/08), 976 So.2d 1277. In doing so, we specifically note that the defendant is not protected by principles of double jeopardy from being adjudicated again as a habitual offender.
 
 See State v. Thomas,
 
 2005-2210 (La.App. 1st Cir.6/9/06), 938 So.2d 168, 177,
 
 writ denied,
 
 2006-2403 (La.4/27/07), 955 So.2d 683.
 

 CONVICTIONS AND SENTENCE IMPOSED ON COUNT ONE AFFIRMED; HABITUAL OFFENDER ADJUDICATION AND SENTENCE ON COUNT TWO VACATED; REMANDED FOR FURTHER PROCEEDINGS.
 

 [1]
 

 . The trial court did not specifically state how many felonies were used to establish the defendant's habitual offender status. As the defendant was sentenced to life imprisonment, presumably the trial court adjudicated the defendant a fourth-felony habitual offender in accordance with the State’s classification. While the original sentences were ordered to be served concurrently, upon adjudication as a habitual offender and subsequent resentenc-ing, the trial court did not specify whether the sentences were to be served concurrently or consecutively.
 

 [2]
 

 . The arguments and issues presented in the defendant’s pro se brief are not easily discern-able, are ambiguous, and do not include record references. Nonetheless, in the interest of justice, the pro se assignments of error will
 
 *1214
 
 be addressed herein to the extent such arguments may be determined.
 

 [3]
 

 . The victim later concluded that the perpetrator actually returned her own money, as the same denominations that were in her purse before the abduction were missing af-terwards.
 

 [4]
 

 . In its appeal brief, the State contends that pursuant to LSA-R.S. 15:501, the defendant was given notice of the State’s intent to introduce the certificate and that the defendant failed to demand that the person who made the analysis testify at trial. While the record before us does not include the notice by the State, the record does reflect the defendant’s motion to have the person, unnamed therein, who performed the analysis present at trial for cross-examination. The record before us does not include evidence that a subpoena was issued or served, although before the trial, the trial judge stated the analyst would be present.
 

 [5]
 

 . The defendant would have to satisfy the requirements of LSA-C.Cr.P. art. 924
 
 et seq.,
 
 to receive such a hearing.
 

 [6]
 

 . Louisiana Code of Evidence article 801 D(4) provides that a statement is not hearsay if:
 

 Things said or done. The statements are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events, and which are necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction.
 

 [7]
 

 . Apparently, the defendant is not challenging the chain of custody of the DNA sample taken from him by Detective Moody in Texas. Nonetheless, we note that the record also sufficiently supports a finding of connexity as to that evidence.
 

 [8]
 

 . The following predicate convictions and dates are listed in the amended habitual offender bill of information: a September 2, 1980 guilty plea to theft; a February 2, 1994 guilty plea to two courts of sexual battery; and a January 3, 2006 guilty plea to failure to register as a sex offender.