## NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2020 KA 0776

STATE OF LOUISIANA

VERSUS

ALLEN G. CAUSEY

Judgment Rendered:   JUN 0 4 2021

\* \* \* \* \* \*

Appealed from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Docket Number 05-16-0688
Honorable Fred T. Crefasi, Judge Presiding

\* \* \* \* \* \*

Hillar C. Moore, III
District Attorney
Dylan C. Alge
Assistant District Attorney
Baton Rouge, Louisiana

Counsel for Appellee
State of Louisiana

Lieu T. Vo Clark
Mandeville, Louisiana

Counsel for Defendant/Appellant
Allen G. Causey

\* \* \* \* \* \*

**BEFORE: GUIDRY, McCLENDON, AND LANIER, JJ.**

**GUIDRY, J.**

Defendant, Allen Causey, was charged by bill of indictment with aggravated kidnapping, a violation of La. R.S. 14:44 (count one), and aggravated rape,[1] a violation of La. R.S. 14:42 (count two).[2] He pled not guilty. After a trial by jury, defendant was unanimously found guilty as charged. The trial court imposed a sentence of two concurrent terms of life imprisonment at hard labor, to be served without the benefit of probation, parole, or suspension of sentence. Defendant now appeals. For the following reasons, we affirm the convictions and sentences.

## STATEMENT OF FACTS

On the evening of April 14, 1995, K.B.[3] was at a Baton Rouge bar playing pool with her brother. Afterwards, her uncle gave her a ride from the bar to her boyfriend's house. Between 3:00 and 4:00 a.m., K.B. left her boyfriend's house to walk home, about six miles away. On the way, she stopped at a store about a quarter of a mile away and used a payphone in an attempt to call a friend to give her a ride.[4] Her friend did not answer. As she walked away from the payphone, a car occupied by two men pulled up and the men asked K.B. for a cigarette. She gave them one, and they drove away. The car then returned, and the men asked K.B. if she wanted a ride. After hesitating, K.B. said she did. Defendant's accomplice exited the car so K.B could enter through the passenger side. K.B. sat in the front seat between the two men, with defendant in the driver's seat. K.B. told the men her address, and they began traveling in the direction of her house.

They approached K.B.'s street, but the car continued past the entrance into the neighborhood. She asked the men why they were not bringing her home, and

---

[1] 2015 La. Acts Nos. 184 and 256, § 1 amended La. R.S. 14:42 to rename or change all references to "aggravated rape" to "first degree rape." See La. R.S. 14:42(E).
[2] Leighton Hills was charged as a co-defendant in the indictment.
[3] The victim is referred to herein by her initials as listed in the indictment. See La. R.S. 46:1844(W). The victim indicated at trial that she used a different last name than what was used for forming her initials in the indictment and contained in the investigation reports and files.
[4] At trial, K.B. indicated that her boyfriend was unable to transport her home because his truck was not working and that while he had a motorcycle, he only had one helmet.

she asked them to bring her home several times. It seemed to K.B. that the men were not going to stop to let her out. K.B. said at the time she was mentally upset and may have been crying. The driver continued on, stopping and reversing direction several times, for about 30 minutes. They eventually stopped on a gravel road near K.B.'s neighborhood. K.B. testified that when the car stopped, she knew she "was in trouble" because while they were driving they told her that she would not "get a ride for nothing." K.B. did not think she could get out of the car at that point, and she could not jump out because there was a man on either side of her.

Shortly after they stopped, K.B. felt something sharp at her neck. One of the men told her she had a choice; that she could "f--k or die." They ordered her to the back seat of the car, where she was raped. Afterwards, the men began to strangle her. K.B. blacked out, and when she woke up, she was on her back, undressed, and on the ground outside. The car was no longer there. She walked to the nearest house, because she was scared the men would come back for her. She arrived at a house, knocked on the door, and the residents called 911.

K.B. was taken to a hospital where a rape exam was conducted and evidence was collected. K.B. had bruises on her neck, and the right side of her face was swollen where one of the men had punched her. She testified that she did not consent to having sex with the men or to being strangled. In November of 2015, DNA from buccal swabs taken from defendant was linked to DNA found in K.B.'s rape kit.

## ASSIGNMENT OF ERROR: INSUFFICIENT EVIDENCE

In his sole assignment of error, defendant contends the State failed to prove he committed an aggravated kidnapping because K.B. voluntarily entered the vehicle with defendant and his accomplice. Defendant alleges that because K.B. did not feel threatened when she entered the vehicle and sat between the two men, the State cannot prove a forcible seizure or that she was enticed or persuaded.

3

Defendant argues that when K.B. entered the vehicle, there was "no evidence to support that when the men initially offered to take K.B. home, that they had the specific intent to commit a rape." Defendant does not claim insufficient evidence to support the aggravated rape conviction.

The State responds that it presented sufficient evidence to prove beyond a reasonable doubt that defendant committed aggravated kidnaping. The State argues that a kidnapping "can occur even where the victim initially consents to being with a defendant."

A conviction based on insufficient evidence cannot stand, as it violates Due Process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See La. C.Cr.P. art. 821(B); State v. Ordodi, 06-0207, p. 10 (La. 11/29/06), 946 So. 2d 654, 660. The Jackson standard of review, incorporated in La. C.Cr.P. art. 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. State v. Westbrook, 14-1055, p. 8 (La. App. 1st Cir. 12/23/14), 2014 WL 7338523, at *4, writ denied, 15-0175 (La. 11/30/15), 184 So. 3d 32.

Louisiana Revised Statute 14:44 provides in pertinent part:

Aggravated kidnapping is the doing of any of the following acts with the intent thereby to force the victim, or some other person, to give up anything of apparent present or prospective value, or to grant any advantage or immunity, in order to secure a release of the person under the offender's actual or apparent control:

(1) The forcible seizing and carrying of any person from one place to another; or

(2) The enticing or persuading of any person to go from one place to another; or

(3) The imprisoning or forcible secreting of any person.

Abduction of the victim made with the intent to commit rape constitutes an intent to force the victim to relinquish something of apparent or prospective value. State v. Patton, 10-1841, p. 22 (La. App. 1st Cir. 6/10/11), 68 So. 3d 1209, 1224; see also State v. Johnson, 50,005, p. 9 (La. App. 2d Cir. 8/12/15), 175 So. 3d 442, 451, writ denied, 2015-1687 (La. 9/16/16), 206 So. 3d 203 (sexual gratification is something of value as contemplated by aggravated kidnapping statute). Additionally, to prove the "forcible seizing" provision of the aggravated kidnapping statute, the State is required to prove: 1) the forcible seizing and; 2) the carrying of any person from one place to another; 3) with the intent to force the victim, or some other person, to give up anything of apparent present or prospective value; 4) in order to secure the release of that person. Westbrook, 14-1055 at p. 14, 2014 WL 7338523 at *7. Specific criminal intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). Specific intent need not be proven as a fact but may be inferred from the circumstances and actions of the accused. State in Interest of J.S., 18-1245 (La. App. 1 Cir. 12/21/18), 268 So. 3d 311, 318. The trier of fact determines whether the requisite intent is present in a criminal case. Patton, 10-1841 at p. 22, 68 So. 3d at 1224.

The circumstances of this case are analogous to another case decided by this court, in which the defendant was convicted of both aggravated kidnapping and forcible rape. In State v. Patton:

> The victim testified that she initially entered the perpetrator's vehicle voluntarily. However, when the defendant did not drive onto the next interstate exit to meet [her friend], she asked the defendant for an explanation. The victim was told to be quiet. The victim testified that she believed she was in danger and that the perpetrator was going to kill her. When she asked to go to a motel, the perpetrator began screaming, pulling and ripping the victim's clothes off, and then raped the victim. According to the victim, she was afraid to resist and fearful of being murdered.

\* \* \*

> In this case, the victim objected to being driven to another location, and her repeated requests to be taken to meet [her friend] were ignored. The defendant took the victim to a place other than [her friend's] location, imprisoned her in his vehicle, and then raped her, forcing her to submit to secure her release, after his taking of something of value from her. Therefore, the elements required to prove aggravated kidnapping under either La. R.S. 14:44(1) or (3) were satisfied.

Patton, 10-1841 at pp. 22 & 25, 68 So. 3d at 1225-26; see also State v. Dupre, 369 So. 2d 1303, 1304 (La. 1979) (defendant convicted of aggravated kidnapping where after accepting a ride as a hitchhiker, defendant pulled a gun on a victim and demanded she drive onto the interstate); State v. Bilbo, 97-2189, pp. 2-3 (La. App. 1st Cir. 9/25/98), 719 So. 2d 1134, 1136, writ denied, 98-2722 (La. 2/5/99), 737 So. 2d 747 (defendant guilty of aggravated kidnapping after co-perpetrator was initially given ride by victim under pretense of getting automotive help, but then overpowered her and took her to be raped by group of men, including defendant); State v. Henderson, 41,657, pp. 6-7 (La. App. 2d Cir. 12/13/06), 945 So. 2d 194, 201-02, writ denied, 07-0267 (La. 11/2/07), 966 So. 2d 597 (defendant guilty of aggravated kidnapping where victim voluntarily accepted a ride from defendant, only to be driven in the wrong direction to another location where he raped her).

Similarly, defendant's emphasis on K.B.'s initial willingness to enter the vehicle with him is misplaced. The moment the vehicle passed K.B.'s neighborhood, and both men ignored her requests to take her home as they had promised, the voluntary ride became a kidnapping. By being trapped between the two men in the front seat of the car, K.B. was forcibly seized so defendant and his accomplice could rape and strangle her. Her inability to leave was heightened by the sharp object held to her throat when they finally stopped driving around. Compliance or death were the two options presented to K.B. Even if aggravated kidnapping was not defendant's original intention when he and the co-assailant picked K.B. up, it quickly became apparent that this was their intention when they

drove past K.B.'s neighborhood and continued driving until they found a location to commit the aggravated rape. In reviewing the evidence, we cannot say that the fact finder's determination was irrational under the facts and circumstances presented. See Ordodi, 06-0207 at p. 14, 946 So. 2d at 662. Any rational fact finder could have found that though K.B. voluntarily entered the vehicle with defendant, she did not consent to being driven anywhere other than to her home. She testified that she told defendant as much and pleaded for the men to bring her home. They did not. Hence, the transporting of K.B. to various places around the area other than her home, before stopping in a secluded area to perpetrate the rape, satisfied the elements of La. R.S. 14:44. This claim is without merit.

**CONVICTIONS AND SENTENCES AFFIRMED.**