DRAKE, J.
li>.The State charged the defendant, Gino Remy Crucia, by bill of information with possession of a Schedule I controlled dangerous substance, (heroin), a violation of La.,R.S. 40:966(C)(1). At. arraignment, the defendant pled not guilty, but following trial, a unanimous jury found him guilty as charged. The defendant filed motions for new trial and post-verdict judgment of acquittal, but the motions were denied by the trial court. The State filed a multiple offender bill of information, alleging the defendant’s status as a fourth-felony habitual offender. During the habitual offender adjudication hearing, the defendant admitted to the. allegations of the amended multiple offender bill of information and was subsequently adjudged a fourth-felony habitual offender.[1] The trial court sentenced the: defendant to twenty years at hard labor without the benefit of probation. or suspension of sentence.[2] The defendant now appeals, assigning error, to the trial court’s denial of a pre-trial motion to suppress evidence and to the State’s failure to present sufficient evidence as to. the chain *754 of custody regarding the seized evidence. For the following reasons, we affirm the defendant’s conviction, habitual offender adjudication, and sentence.

STATEMENT OF FACTS

On March 19, 2014, at approximately 6:00 p.m., Dennis Bush, a sergeant with the Slidell Police Department and a member of the Drug Enforcement Agency (DEA) New Orleans task force, was conducting surveillance in reference to |ssuspeeted drug activity at a gas station in New Orleans East. Sgt. Bush testified he observed a gold Kia arrive at the gas station, with the defendant seated in the passenger seat. A few minutes later, a gold Yukon arrived, and the defendant “quickly got out of the passenger’s seat, walked ovér to the [Yukon’s] passenger’s side window, and a hand-to-hand exchange of a small object occurred. [The defendant] quickly proceeded back to his vehicle that he was the passenger in and got back in the vehicle. Both vehicles pulled out of the gas station in different directions.” Sgt. Bush testified that he was located approximately ninety feet away while the transaction took place and that he observed the occurrence using binoculars. Sgt. Bush informed St. Tammany'Parish Sheriffs detective, Chris Comeaux, who was also a member of the DEA task force and assisting Sgt. Bush, of the suspected drug deal. Det. Comeaux began following the gold Kia,. which began traveling towards Slidell on 1-10 eastbound. Sgt. Bush testified he concurrently followed the gold Yukon in order to obtain additional information regarding the suspected dealer, and upon completing his surveillance, he began traveling back towards Slidell, maintaining radio contact with Det. Co-meaux.
Det. Comeaux testified that the suspected drug transaction took place near the air and vacuum pumps at the gas station, which was “very typical of drug transactions.” After Sgt. Bush informed him of the drug deal, Det. Comeaux followed the gold Kia “as it proceeded back towards the Slidell area on Interstate 10.” While driving towards Slidell, Det. Comeaux alerted' Slidell Police detective John Cole[3] of the situation, who then made arrangements to have the vehicle stopped. Det. Comeaux testified that during the drive back to Sli-dell, he did not observe the driyer of the gold Kia commit any traffic violations, but “[b]ecause of the experience that we’ve had in that area of New Orleans east, the previous arrests pthat we’ve made in that area, along with Dennis Bush, who I know to be reliable and trustworthy, telling me that he witnessed a hand-to-hand transaction ... I believe it was consistent with what we’re seeing.” Det. Comeaux testified that'as the marked Slidell Police units were stopping the gold Kia, “[i]t appeared that all three individuals were what we refer to as furtive movements or shuffling around the car as we were bringing it to a stop. When you radio between one another, yes, they’re moving around the vehicle which indicated they may be trying to conceal something.” Specifically concerning the defendant, Det. Comeaux noted that, “[y]es ... [a]ll three individuals again, including [the defendant], were reaching down towards the floor area,” and that the heroin found in the defendant’s sock would be consistent with his movements prior to being stopped.
Upon his arrival to the scene, Sgt. Bush observed all three passengers standing outside of the vehicle, a pat-down search of the passengers was taking place, and Det. Cole was “focusing his attention on [the defendant] and his shoe.” Det. Comeaux *755 testified that “[Det.] Cole hád notified us that he believed he had found what we were looking for in the defendant’s sock, and when he called attention to it ... the defendant reached down in his left sock here and retrieved it.” Specifically, Det. Comeaux testified that “[Det. Cole] was calling our attention to the fact that he could see the item in the sock and having him remove it at the same time.” Sgt. Bush testified that, “[a]s I saw the shoe come off, within a couple of seconds, X heard [Det.] Cole state he has something in his shoe. I looked and I saw [Det:] Cole removing something in his sock. I saw him removing a small, clear plastic bag containing a substance consistent -with heroin.” Det. Comeaux and Det. Cole then obtained consent to search the vehicle, where they found paraphernalia consistent with heroin usage — two syringes and a burnt metal spoon — from the other passenger’s purse. All three subjects were then arrested and transported to the local Slidell jail. ,
| ¿LAW AND DISCUSSION
Motion to Suppress
In his first assignment of error, the defendant claims the trial court erred in denying his pre-trial motion to suppress. Specifically, he asserts that the heroin found by Det. Cole during the traffic stop was the product of an unreasonable search and seizure. He argues that because “the State failed to establish the officers in this case had a reasonable articulable suspicion that a crime was about to be committed, was being committed, or had been committed, the police did not have the authority to stop the car in which [he] was riding. Consequently, the bag of heroin allegedly seized during this illegal stop should have been suppressed.” Furthermore, the defendant argues that “[e]ven if this Court determines that the stop of the car in which [he] was riding was justified, the search of [him] was unlawful.” The defendant continues by averring that, “[a] pat down search' of [the defendant] was not justified by an objectively reasonable belief that [he] posed a danger. Even .if a pat down search could be considered reasonable in this circumstance, the scope of that search exceeded the permissible boundaries of a limited weapons frisk. The record is void of any testimony that [Det.] Cole felt or saw a bulge in [the defendant’s] sock, which he recognized to be contraband.” Accordingly, the defendant asserts that the search was unreasonable, and that the evidence should have been suppressed.
The Fourth Amendment to the United States Constitution and Article I, Section 5 of the Louisiana State Constitution protect people against unreasonable searches and seizures. Á defendant adversely affected may move to suppress any evidence from use at a trial on the merits on the ground that it was unconstitutionally obtained. La. C.Cr.P. art. 703(A). The State bears the burden of proof when a defendant files a motion tq suppress evidence obtained without.a warrant. See La. C.Cr.P. art. 703(D). When a district court denies a motion to [^suppress, factual and credibility determinations should not be reversed in the absence of a clear abuse of the district court’s discretion, ie., unless such a ruling is not supported by the evidence. See State v. Green, 94-0887 (La.5/22/95), 655 So.2d 272, 280-81. As a general rule, this court reviews district court rulings under a deferential standard with regard to factual and- other trial determinations, while legal findings are subject to a de novo standard of review. See State v. Hunt, 2009-1589 (La.12/1/09), 25 So.3d 746, 751.
*756 While an arrest requires probable cause, an investigatory stop requires only the lesser standard of reasonable suspicion. The relevant inquiry is whether the officer .had reasonable suspicion of “specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant[ed]” the stop of the defendant. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Louisiana Code of Criminal Procedure article-215.1(A) provides, in pertinent part, that “[a] law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about' to commit an offense and may demand of him his name, address, and an explanation of his actions.”
The Louisiana Supreme Court has recognized that with regard to brief investigatory stops, the level of suspicion required to justify the stop need only rise to the level of some minimal level of objective justification. In determining whether sufficient suspicion existed for the stop, a reviewing court must consider the totality of the circumstances, giving deference to the inferences and deductions of a trained police officer that might well elude an untrained person, while also weighing the circumstances known to the police, not in terms of library analysis by scholars, but as those understood by those versed in the field of law enforcement. State v. Caples, 2005-2517 (La.App. 1st Cir.6/9/06), 938 So.2d 147, 154-55, writ denied, 2006-2466 (La.4/27/07), 955 So.2d 684, (citing State v. Huntley, 97-0965, (La.3/13/98), 708 So.2d 1048,1049 (per curiam)).-
In State v. Fearheiley, 2008-0307 (La.4/18/08), 979 So.2d 487 (per curiam), the Louisiana Supreme Court found thát a police officer’s observation of an apparent brief hand-to-hand transaction inside a vehicle gave rise to reasonable suspicion for an investigatory stop. The Supreme Court noted that “[t]he apparent exchange lasted no more than 15 to 20 seconds inside one - of two cars which had arrived separately in the parking lot of a Circle K store with no apparent purpose that evening other than facilitating the brief exchange before the parties, who appeared to the officer to have no other connection to each other, went their separate ways.” As such, the court held that, even if “the encounter had other possible innocent explanations ... [they] did not require the police officer to turn a blind eye to the circumstances and ignore what two years of experience in narcotics investigations, encompassing 15 to 20 arrests, had. taught him, that in the narcotics trade, ‘when it’s done outside, it’s done very fast from one hand to the next.’ ” As such, the officer’s subsequent investigatory stop of the defendant satisfied the requirements of an investigatory stop. Id. at 488-89.
■ In the instant case, we find that the police officers had reasonable suspicion to stop the vehicle in which the defendant was riding. Further, we agree with the defendant, who, in his brief, stated that “[a]n officer’s experience, his knowledge of recent criminal patterns, and his knowledge of an area’s frequent incidence of crimes are factors that may support reasonable suspicion for an investigatory stop.” (citing State v. Sam, 2008-0220 (La.App. 5th Cir.6/19/08), 988 So.2d 765, 769, writ denied, 2008-1984 (La.5/15/09), 8 So.3d 577). The experience of Det. Co-meaux and Sgt. Bush, the circumstances of the gas station transaction, and the “furtive movements” by the three suspects in the car supported the investigatory stop.
| «Additionally, we find the search resulting in the seizure of the heroin was lawful. The defendant incorrectly asserts that “[t]here was no testimony as to how the bag of heroin was discovered,” and that “[t]he record is void of any testimony *757 that [Det.] Cole felt or saw a bulge in [the defendant’s] sock, which he recognized to be contraband.” Det. Comeaux testified that “[Det.] Cole was calling our attention to the fact that he could see the item in the sock....” Moreover, Det. Comeaux testified that when Det. Cole “had notified us that he believed he had found what we were looking for in the defendant’s sock, and when he called attention to it, we all stood by as he retrieved it, and the defendant reached down in his left sock here and retrieved it.” Det. Comeaux further testified that the defendant turned the bag over to Det. Cole.
In State v. Duplessis, 391 So.2d 1116, (La.1980), the Louisiana Supreme Court held that the defendant’s constitutional rights were not violated whén the defendant handed a leather pouch containing a gun to the police in response to the officer’s questioning concerning the contents of the bag. In affirming the defendant’s conviction, the Louisiana Supreme Court recognized that the discovery of the gun was the result of the defendant’s voluntary cooperation, rather than any unlawful police conduct. The supreme court emphasized that the police may lawfully seize evidence that is discovered as a result of a person’s voluntary actions:
We reiterate that no one is required to stop or to answer questions posed by police under circumstances in which the Fourth Amendment protections are operative. However, when one who is suspected of a crime voluntarily complies with a police request, to his own detriment, he cannot reclaim the rights which he has waived.
Id. at 1118.
In the instant case, following the motion to suppress hearing, the trial court ruled as follows:
IsAll right. Given the circumstances of the initial observation by the police officer and subsequent stop, it effects the way the information was relayed — and I’m certainly taking into consideration the credibility of the witnesses.
I don’t think that the defendant’s constitutional rights were in any way violated, that the items that were seized were done so with probable cause, and that the officers had sufficient grounds to make the stop and the search, and the motion to suppress.and the motion for preliminary exam are denied.
We agree with the trial court and find that it did mot abuse its discretion in denying the motion to suppress. ‘ Reasonable suspicion existed to support the investigatory stop, and the defendant’s voluntary actions of removing the héroin from his sock and handing it to Det. Cole supports the lawful seizure of the drugs.' Therefore, this assignment of error lacks merit.
Chain of Custody
In his second assignment of error, the defendant contends that the “State failed to present sufficient evidence to show that the heroin tested by forensic scientist Brittany Graham was the heroin allegedly seized from [him]. A chain of custody for this evidence was not established and this evidence was not received by the crime lab from any officer associated with [his arrest].” The defendant further asserts that “[b]ased on the failure to establish the chain of custody for the heroin, no rational trier of fact could have reasonably believed that this was the heroin allegedly seized from [him].” As such, he concludes that his conviction should be vacated.
Under La. C.Cr.P. art. 841, a contemporaneous objection is required to preserve an error for appellate review. The purpose of the contemporaneous objection rule is to‘allow the trial judge the opportunity to rule on the objection and thereby prevent or cure an error: State v. *758 Hilton, 99-1239 (La.App. 1st Cir.3/31/00), 764 So.2d 1027, 1035, writ denied, 2000-0958 (La.3/9/01), 786 So.2d 113. Irregularities or errors cannot be availed of on appeal if they are not objected to at the time of the occurrence. State v. Walker, 94-0587 (La.App. 1st Cir.4/7/95), 654 So.2d 451, 453, writs denied, 95-1124 and 1125 (La.9/22/95), 660 So.2d 470.
During trial, when the analysis report of the seized heroin by St. Tammany Parish Crime Lab scientist Brittany Graham was admitted into evidence, the defendant did not object to its introduction. The trial court specifically asked defense counsel whether he had any objection to the introduction, with defense counsel simply responding, “[n]o objection, Your Hon- or.” Therefore, because the defendant failed to contemporaneously object on the grounds of a defective chain of custody, this assignment of error constitutes a new ground for objection which was not preserved for appellate review. See State v. Todd, 2003-1230 (La.App. 3d Cir.2/4/04), 866 So.2d 1040, 1041-42, writ denied, 2004-0588 (La.7/2/04), 877 So.2d 143 (due to the lack of a contemporaneous objection, the defendant was precluded from appellate review regarding an allegedly defective chain of custody concerning the introduction of surveillance video tapes and seized cocaine).
Nevertheless, even if the defendant had properly objected to the introduction of the evidence on the grounds of a defect in the chain of custody, any defect goes to the weight of the evidence, rather than its sufficiency. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. La. C.E. art. 901(A). This identification may be visual, by testimony at trial that the object exhibited is the one related to the case, or it may be identified by a chain of custody, which establishes the custody of the object from the time it was seized to the time it was offered into evidence. For admission, it suffices if the custodial evidence establishes that it was more probable than not that the object is the one connected to the case. A preponderance of the evidence is Insufficient. State v. Berry, 95-1610 (La.App. 1st Cir.11/8/96), 684 So.2d 439, 455, writ denied, 97-0278 (La.10/10/97), 703 So.2d 603. However, the law does not require that the evidence as to custody eliminate all possibility that the object has been altered. Lack of positive identification or a defect in the chain of custody goes to the weight of the evidence, rather than its admissibility. Ultimately, a chain of custody or connexity of the physical evidence is a factual matter for determination by the jury. State v. Patton, 2010-1841 (La.App. 1st Cir.6/10/11), 68 So.3d 1209, 1222.
Sgt. Bush identified State Exhibit 1 as the item that came from the defendant’s left sock. Thereafter, Brittany Graham, who was qualified as an expert in the field of controlled dangerous substance analysis and determination, testified that she received the seized heroin, broke the existing envelope seal, tested the heroin, and then resealed the envelope. Graham testified that the seal presented to her at trial was hers, and that she recognized her handwriting on the envelope. Furthermore, Graham testified that there was “[absolutely [no]” doubt that the evidence she received was heroin.
Based on our review of the connexity foundation laid, the record supports a finding that it is more probable than not that the tested scientific evidence was connected to this case. Further, the record reveals no indication of evidence tampering or that the evidence was compromised in *759 any way. Because Graham positively identified the heroin and the envelope in which it was received, any defect in the chain of custody is a factual matter to be determined by the jury. See Patton, 68 So.3d at 1222. Accordingly, this assignment of error is not preserved for appellate review, or is otherwise without merit.
CONVICTION, HABITUAL OFFENDER ADJUDICATION, AND SENTENCE AFFIRMED.

. Predicate #1 was set forth as the, defendant’s November 18, 1996 conviction, under Twenty-Second Judicial District Court Docket #255161, to Possession of Cocaine. Predicate # 2 was set forth as the defendant’s June 4, 1999 guilty plea, under Twenty-Second Judicial District Court Docket # 297918, to Possession of Alprazolam. Predicate # 3 was set forth as the defendant’s September 11, 2006 conviction, under Twenty-Second Judicial District Court Docket # 404452, to Possession of Marijuana.

. While the minutes reflect the defendant's sentence is to be served without benefit of probation, parole, or suspension of sentence, the sentencing transcript only restricts probation and suspension of sentence. Louisiana Revised Statutes 15:529.1(G) provides that any sentence imposed under the habitual offender law “shall be at hard labor without benefit of probation or suspension of sentence.” It is well settled that in the event of a discrepancy between the minutes and the transcript, the transcript prevails. See State v. Lynch, 441 So.2d 732, 734 (La.1983).

. At the time of trial, Det. Cole was deceased.