HOLDRIDGE, J.
The defendant, Carlos Cespedes, was charged by bill of information with two counts of attempted second degree murder, violations of Louisiana Revised Statutes 14:30.1 and 14:27 (counts one and two);[1] unauthorized entry of an inhabited dwelling, a violation of Louisiana Revised Statutes 14:62.3 (count three); theft of a motor vehicle valued at $1,500 or more, a violation of Louisiana Revised Statutes 14:67.26C(1) (prior to revision by 2017 La. Acts No. 281, § 1) (count four); and violation of a protective order, a violation of Louisiana Revised Statutes 14:79A(1)(a) (count five). The defendant entered a plea of not guilty to all counts. After a preliminary hearing, the district court found no probable cause for count five. Following a jury trial, the defendant was found guilty as charged on counts one, three, and four, and guilty of the responsive offense of attempted manslaughter, a violation of Louisiana Revised Statutes 14:31 and 14:27, on count two. The district court sentenced the defendant to thirty years at hard labor without the benefit of parole, probation, or suspension of sentence on count one; ten years at hard labor on count two; five years at hard labor on count three; and eight years at hard labor on count four. The court ordered that the *345 sentences run concurrently. The defendant filed a motion to reconsider sentences, which the district court denied. The defendant now appeals, alleging three assignments of error. For the following reasons, we affirm the defendant's convictions and sentences.
FACTS
On November 14, 2014, around 8:30 p.m., Morgan City Police Department Officer Jobe Gagliano responded to a report of shots being fired outside an apartment on Seventh Street in Morgan City. Upon arrival, Officer Gagliano spoke with the victims, Josefina Segura and Subraj Singh, who were terrified. Segura advised that the offender was her ex-boyfriend, the defendant. Singh advised that after the incident, the defendant fled the scene in Singh's vehicle, without his consent, which he had left running in the driveway.
Morgan City Police Department Detective Travis Trigg also responded to the scene and learned that the defendant entered Segura's residence without authorization from Segura while she was not home. When Segura and Singh, who was her boss, arrived home, they found the defendant in the kitchen. The defendant pointed a gun at Segura and then at Singh. He fired a shot in Singh's direction, and Segura and Singh ran out of the apartment. The defendant ran behind them and fired a second shot at Singh. He then followed Segura, cornered her, and fired a third shot before fleeing in Singh's vehicle. Detectives took photographs of the apartment and a pair of shoes found in the kitchen of the apartment, which Segura identified as belonging to the defendant. Detectives also collected a handwritten note from the kitchen table, which was written in Spanish and signed by the defendant. The note was subsequently translated:
Josefina, forgive me for entering the house the way I did. But the truth is I would have died of cold out there in the streets. I know you don't want to see me, but please don't accuse me for this. You're the only thing I had and I don't have a place to go. I'm waiting for you to understand and accept what my situation is. Without money, no house, without a place to go. The police, they don't leave me alone. They don't give me peace. And I don't have money to pay. I don't know what to do now. In my life I had everything in you, and I lost it. And I lost everything in the blink of an eye. I'm asking you to understand my situation. You, more than anyone, understand. I wanting that you don't take charges against me, or put charges against me. Thank you and forgive me. For everything. Heart.
Segura advised that she did not grant the defendant access to the apartment and that, other than her landlord, she was the only person with a key to the apartment at the time. Detectives located a broken window in the bathroom, which they believed was the defendant's point of entrance. According to Segura, prior to that night, she did not have any broken windows and the door was not damaged. They also observed marks of forced entry on the front door. Marks consistent with a bullet ricocheting were found on a neighbor's vehicle in the carport area of the neighbor's house. Also found in that area were bullet fragments consistent with a .22 caliber weapon.
Singh testified that he owns a gas station in Morgan City where Segura is employed. On the date of the incident, he drove Segura home from work because she did not have transportation. He explained that he left his vehicle running and walked Segura to her door in order to make sure the apartment was safe. When Segura walked into her kitchen, she said, "Carlos, *346 what you doing here?" Singh testified that he then saw the defendant point a gun, which he described as a silver revolver, at her. When the defendant saw Singh, he shot at him. Singh immediately ran downstairs, ran across the street, and called the police. He heard another shot being fired as he ran downstairs and a third once he was across the street. Singh explained that the defendant left the scene in his vehicle, which he described as a 2009 Honda Accord valued at approximately $14,000. The following morning, the defendant called the gas station and cursed at Singh and told him that he was "not finished yet."
Segura also testified at trial and explained that the defendant was her ex-boyfriend. Prior to the date of the incident, she had not been home for four days. She had been staying in a hotel near the gas station because she was afraid to go home after ending the relationship with the defendant approximately six months prior. She explained that she had always lived at the apartment alone and that only she and her landlord had a key. Upon arriving home, she opened her door with her key and began to walk inside. When she walked inside of the kitchen and turned on the light, she saw the defendant who was pointing a silver revolver at her. The defendant fired his gun at Singh, and she and Singh ran downstairs. She heard a second shot as she ran. Remembering that her neighbors had a surveillance system, she attempted to stay in front of the cameras so "at least somebody [was] going to know who killed [her]." Segura explained that the defendant ran after Singh, but returned to her and fired his gun at her twice as she covered her face with her purse. She then threw her purse on the gun and jumped on the defendant's back. The defendant then ran away from her and left in Singh's vehicle. After the incident, the defendant called the gas station and told her that he was going to "finish what he start[ed]." She provided officers with a list of all of the telephone numbers from which the defendant had called her.
Amico Aloisio testified that he lived next to Segura's apartment, and they shared a driveway. On the night of the incident, he heard a vehicle pull up. Shortly thereafter, he heard gunshots. He watched video from his surveillance cameras and noticed that someone who appeared to be Segura and a man were underneath the carport and appeared to be having an argument. He heard another gunshot and then saw the man get inside of a vehicle and back out of the driveway. A video of the surveillance was played for the jury.
Detectives obtained the defendant's cellular telephone number and records in order to locate him. The records corroborated Singh's statement that after the incident, the defendant called him at his place of business. The defendant was ultimately located in New Orleans and taken into custody.
MOTION FOR MISTRIAL
In his first assignment of error, the defendant argues that the district court erred in denying his request for a mistrial. Specifically, he complains that Detective Trigg's testimony that law enforcement obtained the defendant's cellular telephone number "from Ms. Segura or from prior police records" was prejudicial when coupled with the fact that references were made during trial to harassing telephone calls made by the defendant.
During the questioning of Detective Trigg, the following colloquy occurred between the witness and the prosecutor:
Q: After you conducted the collection of evidence and taking photographs at the scene, what did you do next, Detective?
A: After processing the scene, I proceeded to the Morgan City Police Department *347 to file an exigent circumstances request for [the defendant's] cell phone number.
Q: And was that cell phone number provided to you at some point?
A: Yes.
Q: From whom?
A: I believe it came from Ms. Segura or from prior police records.
Defense counsel asked to approach the bench and stated, "I'd like to object to the last statement the officer made about prior probation records. The defendant has not taken the stand. He has already said it. I'm going to have to object to the statement when the officer said prior police records." The State responded, "He said he either got it from Ms. Segura or prior police records. He didn't say prior arrest record. I don't think it was a question that was posed and I don't think in the way it was answered it rises to the level-I'm definitely not going anymore down that trail, Your Honor." The following colloquy then occurred:
[District Court]: You're making an objection?
[Defense Counsel]: Yes, sir. It's out now. You have to admonish the jury or something, Judge.
[District Court]: What?
[Defense Counsel]: I ask that said that [sic] you do an admonishment to the jury or something. He said it. It's out.
[The State]: All he said is prior police records. I think admonishing him-
At that point, the colloquy at the bench concluded, and the court retired the jury. Defense counsel made the following objection for the record:
Judge, for the record, I'd like to object to the comment the officer made concerning the defendant's prior police records. I think that the defendant has a right to remain silent. He can't be compelled to testify. By the officer making that statement, what he's actually doing is he's violating that right, Your Honor.
The district court responded, "Well, I don't know if he's violated the right of the defendant not to testify. What he has done is interject that the defendant may have been arrested previously." The State cautioned that an admonishment may bring more attention to the Detective's response and have an adverse effect on the defense. Defense counsel responded, "The problem with that is we don't know what's in the mind of the jurors. We have no clue what they're thinking. They heard. It's there. That would be fine for us as lawyers and officers of the court, but we don't know what they think. They're lay people." The court asked defense counsel, "So, you're just objecting? You want an admonishment? What do you want?" Defense counsel then moved for a mistrial.
In ruling, the court noted that Detective Trigg did not make reference to another crime or arrest, just that he had the defendant's number in police records. The court denied the motion for mistrial and offered to admonish the jury. When asked what type of admonishment he wanted, defense counsel responded, "I don't think I want anything at all." The jury then returned to the courtroom. When testimony resumed after the ruling on the motion, Detective Trigg explained that he obtained the defendant's cell phone number in order to locate him by tracking his global positioning system location.
Louisiana Code of Criminal Procedure article 771 provides, in pertinent part:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of *348 such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
* * *
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
A mistrial under the provisions of Article 771 is at the discretion of the district court and should be granted only where prejudicial remarks of the witness make it impossible for the defendant to obtain a fair trial. Moreover, unsolicited and unresponsive testimony is not chargeable against the State to provide a ground for mandatory reversal of a conviction. Nor is a statement chargeable to the State solely because it was in direct response to questioning by the prosecutor. Although a prosecutor might have more precisely formulated the question that provoked the disputed response, where the remark is not deliberately obtained by the prosecutor to prejudice the rights of the defendant, it is not the basis for a mistrial. See State v. Anderson, 2000-1737 (La. App. 1st Cir. 3/28/01), 784 So.2d 666, 682, writ denied, 2001-1558 (La. 4/19/02), 813 So.2d 421 ; State v. Tran, 98-2812 (La. App. 1st Cir. 11/5/99), 743 So.2d 1275, 1280, writ denied, 99-3380 (La. 5/26/00), 762 So.2d 1101.
A reference by a police officer to prior contact with a defendant is not a reference to other crimes allegedly committed by the defendant. See State v. Washington, 430 So.2d 641, 648 (La. 1983) ; State v. Taylor, 430 So.2d 686, 694 (La. App. 2nd Cir.), writ denied, 438 So.2d 575 (La. 1983). In the instant case, the district court correctly concluded that the reference by Detective Trigg to obtaining the defendant's cellular telephone numbers from either Segura or "prior police records" was not a reference to other crimes committed by or arrests of the defendant. Thus, the district court correctly denied the motion for mistrial. Moreover, in the absence of a request for an admonition by defense counsel, the court did not err in not admonishing the jury to disregard the ambiguous remark of Detective Trigg. See State v. Jack, 554 So.2d 1292, 1296 (La. App. 1st Cir. 1989), writ denied, 560 So.2d 20 (La. 1990). Accordingly, this assignment of error is without merit.
JURY REQUEST
In his second assignment of error, the defendant argues that the district court erred in refusing to allow the jurors to review the surveillance video that had been shown at trial when requested during their deliberations. Specifically, the defendant contends that because the verdicts on counts one and two were non-unanimous, there is "a very real possibility that had the trial judge not misstated the law to the jurors and allowed the jurors to view the videotape, other jurors could have voted that the State failed to carry their burden of proving that [the defendant] had specific intent to kill when he fired the gun."
After the jury retired for deliberations, it requested to see the surveillance video footage that was played during trial. The district court instructed the jury that the law prohibited them from viewing the exhibit.
Louisiana Code of Criminal Procedure article 793 provides:
A. Except as provided in Paragraph B of this Article, a juror must rely upon *349 his memory in reaching a verdict. He shall not be permitted to refer to notes or to have access to any written evidence. Testimony shall not be repeated to the jury. Upon the request of a juror and in the discretion of the court, the jury may take with it or have sent to it any object or document received in evidence when a physical examination thereof is required to enable the jury to arrive at a verdict.
B. A juror shall be permitted to take notes when agreement to granting such permission has been made between the defendant and the state in open court but not within the presence of the jury. The court shall provide the needed writing implements. Jurors may, but need not, take notes and such notes may be used during the jury's deliberations but shall not be preserved for review on appeal. The trial judge shall ensure the confidentiality of the notes during the course of trial and the jury's deliberation and shall cause the notes to be destroyed immediately upon return of the verdict.
C. The lack of consent by either the defendant or the state to allow a juror to take notes during a trial shall not be communicated to the jury.
Under the plain language of Article 793, a videotape/audiotape recording of a crime as it occurs is neither written evidence nor testimony. See State v. Adams, 550 So.2d 595, 599 (La. 1989) ("The general reason for the prohibition is a fear that jurors might give undue weight to the limited portion of the verbal testimony thus brought into the room with them.") (internal quotation marks and citation omitted) (emphasis added). Nor is the tape a recorded confession or inculpatory statement made by the defendant after the commission of a crime. See Adams, 550 So.2d at 598-99 (conviction of first degree murder reversed because jury reviewed audiotape and transcript of the defendant's confession during deliberations). See State v. Brooks, 2001-0785 (La. 1/14/03), 838 So.2d 725, 727-28 (per curiam).
In State v. Davis, 92-1623 (La. 5/23/94), 637 So.2d 1012, 1025, cert. denied, 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994), the Louisiana Supreme Court stated:
A videotape, which is like a photograph, is neither testimony nor written evidence and is not excluded by [ Article 793 ]. A photograph is a reproduction of a physical object or scene. It is not "written"
evidence of "testimony" within the meaning of [ Article 793 ], which prohibits the use of written material during deliberations. Hence, a jury's request to see a videotape after it retired to deliberate ... is not an abuse of the court's statutory discretion." See State v. Overton, 337 So.2d 1058 (La. 1976).
Because viewing video surveillance is not precluded by Article 793, the district court should have allowed the jury to review the video per its request. However, the defendant failed to object to the district court's ruling. The failure to raise a contemporaneous objection to a ruling of the court constitutes a waiver of that objection. La. Code of Crim. P. art. 841 ; State v. Calvert, 2007-1910 (La. App. 1st Cir. 6/6/08), 2008 WL 2332323, *3 (unpublished), writ denied, 2008-1602 (La. 4/17/09), 6 So.3d 784. Moreover, the defendant has failed to show he suffered any prejudice from the district court's ruling because the jury had the opportunity to view the surveillance video during the trial. We have carefully reviewed the surveillance video and do not find that it contains any exculpatory evidence. The video clearly shows the offender, identified by both victims as the defendant, pointing a gun at each of the victims as they attempted to *350 run from him. The video is also corroborative of the testimony of Segura, Singh, and Aloisio. Accordingly, this assignment of error is without merit.
NON-UNANIMOUS JURY VERDICTS
In his last assignment of error, the defendant argues that the verdicts in counts one and two should be declared invalid because they were non-unanimous. Specifically, the defendant contends that the non-unanimous verdicts on those two counts violated his rights to due process and equal protection.
It is well-settled that a constitutional challenge may not be considered by an appellate court unless it was properly pleaded and raised in the district court below. A party must raise the unconstitutionality in the district court, the unconstitutionality must be specially pleaded, and the grounds outlining the basis of unconstitutionality must be particularized. See State v. Hatton, 2007-2377 (La. 7/1/08), 985 So.2d 709, 718-19. In the instant case, the defendant failed to raise his challenge to Louisiana Constitution Article I, § 17A in the district court. Accordingly, the issue is not properly before this court.
Nevertheless, we address this oft-repeated issue to press this court's position that this argument regarding non-unanimous verdicts is untenable. The crime of attempted second degree murder is punishable by imprisonment at hard labor for not less than ten nor more than fifty years without the benefit of parole, probation, or suspension of sentence. See La. R.S. 14:30.1 & 14:27. Louisiana Constitution article I, § 17A and Louisiana Code of Criminal Procedure article 782A provide that in cases where punishment is necessarily at hard labor, the case shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict. Under both state and federal jurisprudence, a criminal conviction by a less than unanimous jury does not violate a defendant's right to trial by jury specified by the Sixth Amendment and made applicable to the states by the Fourteenth Amendment. See Apodaca v. Oregon, 2 406 U.S. 404, 413-14, 92 S.Ct. 1628, 1634, 32 L.Ed.2d 184 (1972); State v. Belgard, 410 So.2d 720, 726 (La. 1982) ; State v. Shanks, 97-1885 (La. App. 1st Cir. 6/29/98), 715 So.2d 157, 164-65.
The defendant suggests that since subsequent legal developments call Apodaca into serious question, the non-unanimous verdicts on counts one and two were in violation of his due process and equal protection rights. In support of this assertion, the defendant cites the decision of McDonald v. City of Chicago, Ill., 561 U.S. 742, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010). The defendant's reliance on this jurisprudence is misplaced. The McDonald Court, while holding that the Second Amendment right to keep and bear arms is fully applicable to the states through the Fourteenth Amendment, did nothing to alter the well-established jurisprudence holding that the Due Process Clause does not require unanimous jury verdicts in state criminal trials. See McDonald, 561 U.S. at 765-66, 130 S.Ct. at 3035 n. 14. The McDonald Court specifically stated that, although the Sixth Amendment requires unanimous jury verdicts in federal criminal trials, it does not require unanimous jury verdicts in state criminal trials. See *351 McDonald, 561 U.S. at 765-66, 130 S.Ct. at 3035 n. 14 ; and State v. Bishop, 2010-1840 (La. App. 1st Cir. 6/10/11), 68 So.3d 1197, 1205, writ denied, 2011-1530 (La. 12/16/11), 76 So.3d 1203. The defendant's argument has been repeatedly rejected by this court. See State v. Smith, 2006-0820 (La. App. 1st Cir. 12/28/06), 952 So.2d 1, 15-16, writ denied, 2007-0211 (La. 9/28/07), 964 So.2d 352 ; and State v. Caples, 2005-2517 (La. App. 1st Cir. 6/9/06), 938 So.2d 147, 156-57, writ denied, 2006-2466 (La. 4/27/07), 955 So.2d 684.
Thus, while Apodaca was a plurality rather than a majority decision, the United States Supreme Court, as well as other courts, has cited or discussed the opinion various times since its issuance and, on each of these occasions, it is apparent that its holding as to non-unanimous jury verdicts represents well-settled law. State v. Bertrand, 2008-2215 (La. 3/17/09), 6 So.3d 738, 742. Thus, Louisiana Constitution article I, § 17A and Louisiana Code of Criminal Procedure article 782A are not unconstitutional and, therefore, not in violation of the defendant's constitutional rights. See State v. Hammond, 2012-1559 (La. App. 1st Cir. 3/25/13), 115 So.3d 513, 514-15, writ denied, 2013-0887 (La. 11/8/13), 125 So.3d 442, cert. denied, --- U.S. ----, 134 S.Ct. 1939, 188 L.Ed.2d 965 (2014).
This assignment of error is without merit.
CONCLUSION
For the foregoing reasons, the defendant's convictions and sentences are affirmed.
CONVICTIONS AND SENTENCES AFFIRMED.

The victim named in count one is Josefina Segura. The victim named in count two is Subraj Singh.