NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 KA 0669

STATE OF LOUISIANA

VERSUS

WALTER PERELL FISHER, JR.

Judgment Rendered: NOV 1 5 2019

Appealed from the
Twenty-Second Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Docket Number 589750-1

Honorable Martin E. Coady, Judge Presiding

*************

Warren L. Montgomery
Matthew Caplan
J. Bryant Clark, Jr.
Covington, LA

Counsel for Appellee,
State of Louisiana

Cynthia K. Meyer
New Orleans, LA

Counsel for Defendant/Appellant,
Walter Perell Fisher

*************

BEFORE: WHIPPLE, C.J., GUIDRY, AND CRAIN, JJ.

Guidry, J. dissents and assigns reasons.
Crain, J. concurs.

**WHIPPLE, C.J.**

The defendant, Walter Perell[1] Fisher, was charged by bill of information[2] with possession of a controlled dangerous substance (methamphetamine) as set forth in LSA-R.S. 40:964 Schedule II(C)(2), a violation of LSA-R.S. 40:967(C) (count one), and possession of a legend drug[3] (promethazine) without a prescription or order, a violation of LSA-R.S. 40:1060.13 (count two).[4] He pled not guilty on both counts. After a trial by jury, he was found guilty as charged on both counts. The trial court originally sentenced the defendant to two years imprisonment at hard labor on count one and five years imprisonment at hard labor on count two, to run concurrently.

The State subsequently filed a habitual offender bill of information to enhance the sentences on both counts. The defendant pled not guilty to the multiple offender bill on arraignment. After a hearing, the trial court adjudicated the defendant a third-felony habitual offender, vacated the original sentences, and resentenced the defendant to four years imprisonment at hard labor on count one

---

[1]The record is inconsistent as to whether the defendant's middle name is Perell or Terell and in regards to the designation of him as a junior. The name used in this appeal is consistent with the bill of information.

[2]While tried separately, the defendant was charged in the same bill of information with Richard Joseph Dantin and Samantha Ann Irvin. Also, while the defendant was only tried on the two drug offenses identified herein, he was charged by the same bill of information with two counts of contributing to the delinquency of juveniles, violations of LSA-R.S. 14:92.

[3]"Legend drug" is defined as "any drug or drug product bearing on the label of the manufacturer or distributor, as required by the Federal Food and Drug Administration, the statement 'Caution: Federal law prohibits dispensing without prescription.'" LSA-R.S. 40:1060.11(3); see also LSA-R.S. 40:961(25).

[4]The instant offenses were committed on May 1, 2017. As a result of the 2018 amendment of LSA-R.S. 40:1060.13, the offense of possession of a legend drug without a prescription or order (count two) was downgraded to a misdemeanor, punishable by a fine of not more than five hundred dollars, imprisonment for not more than six months, or both. See LSA-R.S. 40:1060.13(B). However, at the time of the instant offense, it was punishable by imprisonment, with or without hard labor, for not more than five years and a non-mandatory fine of not more than five thousand dollars. See LSA-R.S. 40:1060.13 (prior to amendment by 2018 La. Acts, No. 203, § 1). Thus, the offense on count two was a felony at the time of its commission.

and ten years imprisonment at hard labor on count two.[5]

The trial court further ordered that the sentences be served without the benefit of probation or suspension of sentence and that they run consecutively.[6] The trial court denied a motion to reconsider sentence filed by the defendant.

The defendant now appeals, raising five assignments of error, challenging: (1) the sufficiency of the evidence, (2) the admission at trial of his pretrial interview, (3) the propriety of portions of the State's closing arguments, (4) the trial court's denial of the jury's request to view evidence during deliberations, and (5) the constitutionality of the sentences. For the following reasons, we affirm the defendant's convictions, habitual offender adjudication, and sentences.

## STATEMENT OF FACTS

On May 1, 2017, Agent Steve Everly of the Division of Probation and Parole of the Louisiana Department of Public Safety and Corrections was informed by his supervisor of drug activity at 3727 Brookwood Drive in Slidell, the residence of a parolee, Richard Dantin, and was instructed to perform a residence check. Agent Everly contacted detectives of the Narcotics Task Force, met them at the Slidell Police Department (SPD), briefed them on the information received from his supervisor, and made arrangements for the residence check. Upon their arrival, Agent Everly knocked on the front door, asked for Dantin, and was told that Dantin was on the back porch. Agent Everly walked to the back porch, where he heard two subjects, one identified as Dantin, apparently arguing over a drug

---

[5]The habitual offender adjudication was based on predicate offenses of possession of a Schedule II controlled dangerous substance (a violation of LSA-R.S. 40:967(C), possession of a legend drug without a prescription (a violation of LSA-R.S. 40:1238.1 (later redesignated as LSA-R.S. 40:1060.13)), possession of marijuana, second offense (a violation of LSA-R.S. 40:966(C)) and possession or introduction of contraband into a penal institution (a violation of LSA-R.S. 14:402).

[6]After the habitual offender adjudication and resentencing, the defendant filed a motion for post-verdict judgment of acquittal and a motion for new trial. The trial court denied both of the motions.

3

transaction.[7] After Agent Everly announced his presence and asked Dantin if he had any weapons on his person, Dantin removed a vial of methamphetamine, a pipe, and a lighter from his right pocket and handed them to Agent Everly. Dantin was then handcuffed and the residence was secured, pending the acquisition of a search warrant.

Detective David McNeese of the Narcotics Task Force and SPD Officer Charles Esque participated in the execution of the search warrant. The detectives learned that the residence was also occupied by Dantin's fiancée, Kristie Smith; the defendant; and the defendant's girlfriend, Samantha Irvin. Detective McNeese searched the bedroom that purportedly belonged to the defendant and Irvin. In the pocket of a black New Orleans Saints jacket hanging in the closet, along with other male and female clothing, he located a small, red container that contained suspected methamphetamine and a prescription bottle made out to Irvin. Detective McNeese also located in the bedroom a white pill (suspected promethazine) in a black tray on the nightstand, a marijuana grinder, and a digital scale.[8]

At the time of the officer's arrival, the defendant was in the bathroom taking a bath. Dantin was arrested for possession of methamphetamine, drug paraphernalia, and other items located in the common areas of the residence. The defendant and Irvin were arrested for possession of the methamphetamine, drug paraphernalia, and promethazine located in the room designated as their bedroom.

[7]Agent Everly testified that before he opened the porch door, he heard one of the individuals complain that he was not getting his money's worth, as Dantin and the other male subject argued over product pricing. The other individual, Jeremy Oaks, was arrested on an unrelated warrant.

[8]Deana Bard, a lab analyst at the St. Tammany Parish Sheriff's Office Crime Lab, testified that she tested the white pill removed from the nightstand and identified it as promethazine. She further confirmed that the crystalline material from the red container, found in the pocket of the Saints jacket, consisted of methamphetamine. Detective McNeese testified that along with the items found in the defendant's bedroom, additional narcotics, another pipe (commonly used with methamphetamines), plastic baggies with the corners torn off (commonly used to package powder substances), straws, and a mirror (commonly used to snort powder substances) were found in the residence.

## ASSIGNMENT OF ERROR NUMBER ONE

In assignment of error number one, the defendant argues that the evidence is insufficient to support the convictions. He contends that he was in the bathroom at the time of the search of his residence and was not in physical possession of any drugs. While conceding that the State proved he spent several nights in the bedroom where the jacket containing methamphetamine was recovered, he contends that the State failed to prove that he had knowledge of its existence. He claims that the jacket did not belong to him, noting that it was a size medium while he is "a large man." He further notes that the search was conducted in May, contending it was several months after it would have been cold enough to wear the jacket. He claims that testimony presented at trial varied as to who placed the methamphetamine in the jacket pocket. The defendant contends that the amount of the substance seized, which he describes as a very small amount (adding that it was less than a gram), has a bearing on his guilty knowledge or intent. He argues that the State failed to refute every reasonable hypothesis of innocence or prove beyond a reasonable doubt that he knowingly and intentionally possessed methamphetamine. Regarding the promethazine, the defendant similarly argues that there is no evidence that he knew of its presence. He contends that Irvin had been very ill for three days prior to the search of the residence, and as such, he argues that the State failed to refute the reasonable possibility that Irvin was using the medication to alleviate nausea.

A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct.

2781, 2789, 61 L. Ed. 2d 560 (1979); State v. Ordodi, 2006-0207 (La. 11/29/06), 946 So. 2d 654, 660; see also LSA-C.Cr.P. art. 821(B). The Jackson v. Virginia standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, LSA-R.S. 15:438 provides that the fact finder, in order to convict, must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. When a case involves circumstantial evidence and the trier of fact reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. State v. Dyson, 2016-1571 (La. App. 1st Cir. 6/2/17) 222 So. 3d 220, 228, writ denied, 2017-1399 (La. 6/15/18), 257 So. 3d 685.

To support the conviction on count one of possession of methamphetamine the State had to prove beyond a reasonable doubt that: 1) the defendant was in possession of the drug, and 2) the defendant knowingly and intentionally possessed it. See LSA-R.S. 40:967(C); see also State v. Wagner, 2013-1628 (La. App. 1st Cir. 5/2/14), 2014 WL 1778360, at *7. Regarding count two, possession of a legend drug without a prescription or order, LSA-R.S. 40:1060.13(A) provides, in pertinent part, that it shall be unlawful for any person to possess any legend drug except upon the order or prescription of a physician or licensed health care practitioner as defined in LSA-R.S. 40:961. See also State v. Mendez, 2013-909 (La. App. 5th Cir. 4/23/14), 140 So. 3d 284, 290-91, writ denied, 2014-1085 (La. 1/9/15), 157 So. 3d 596. In this case, the defendant does not contest that promethazine is a legend drug. See LSA-R.S. 40:1060.11(3). See 40:1060.11(3).

On the issue of whether the evidence sufficiently proved possession, the State is not required to show actual possession of the drugs by a defendant in order to convict. State v. Trahan, 425 So. 2d 1222, 1226 (La. 1983); State v. Howard,

6

2018-0317 (La. App. 1st Cir. 9/21/18), 258 So. 3d 66, 74, writ denied, 2018-1650 (La. 5/9/19), 269 So. 3d 692. Constructive possession is sufficient. A person is considered to be in constructive possession of a drug if it is subject to his dominion and control, regardless of whether or not it is in his physical possession. Also, a person may be in joint possession of a drug if he willfully and knowingly shares with another the right to control the drug. State v. Hamilton, 2002-1344 (La. App. 1st Cir. 2/14/03), 845 So. 2d 383, 392, writ denied, 2003-1095 (La. 4/30/04), 872 So. 2d 480. However, mere presence in the area where narcotics are discovered or mere association with the person who controls the drugs or the area where the drugs are located is insufficient to support a finding of constructive possession. State v. Harris, 94-0970 (La. 12/8/94), 647 So. 2d 337, 338 (per curiam); Howard, 258 So. 3d at 74.

A determination of whether or not there is possession sufficient to convict depends on the peculiar facts of each case. Relevant factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession include: (1) his knowledge that illegal drugs were in the area; (2) his relationship with the person, if any, found to be in actual possession; (3) his access to the area where the drugs were found; (4) evidence of recent drug use by the defendant; (5) his physical proximity to the drugs; and (6) any evidence that the particular area was frequented by drug users. Guilty knowledge, an essential component of constructive possession of contraband, may be inferred from the circumstances of the case. State v. Moultrie, 2014-1535 (La. App. 1st Cir. 12/14/17), 234 So. 3d 142, 145, writ denied, 2018-0134 (La. 12/03/18), 257 So. 3d 1252.

Detective McNeese testified that in addition to the drugs at issue herein, the marijuana grinder, the digital scale, and plastic baggies, he recovered a Charter bill in Irvin's name for the residence at issue. He also stated that the defendant's

7

Louisiana Purchase Card[9] was located in a box that was on a shelf of shoes. When asked on cross-examination what evidence he had that the defendant lived in the residence, Detective McNeese stated that the police had statements from subjects on the scene, the presence of male clothing and shoes, and the defendant's Louisiana Purchase Card.

Additionally, Officer Esque recalled seeing in the residence bills addressed to the defendant at another address. Officer Esque further testified that male and female clothing were located in the bedroom closet. When asked if he thought the defendant could fit the black Saints jacket that contained the methamphetamine, he testified, "That particular jacket. Yes, sir." While the jacket was not seized, it was photographed in its original location along with the rest of the interior of the bedroom and other parts of the residence. Officer Esque further testified that the defendant told him that the dog present at the residence, a Pit Bull, belonged to him. Dantin admitted that the drugs located on his person and in the common areas of the residence belonged to him.

While not necessarily agreeing to the veracity of the testimony of either witness, the parties entered into a stipulation that if Irvin and Dantin were called at trial to testify, they would testify in accordance with their testimony given months earlier in the case against Dantin and in an unrelated case against the defendant. Dantin, in part, testified that the defendant and Irvin were staying at his and his fiancée Smith's house, that the defendant and Irvin had their own bedroom, and that he had limited access to their bedroom. He added that he would always knock before entering their bedroom and was never in there outside of their presence. He stated that he found out about the drugs located in their bedroom after they were seized by the police and denied ever placing drugs or drug paraphernalia in their

---

[9]A Louisiana Purchase Card was described by Detective McNeese as being food stamps that are directly deposited to a card to allow automatic access.

8

bedroom. Irvin testified that the methamphetamine belonged to Smith and that Smith had hidden it in Irvin's room to prevent Dantin from taking it. Irvin denied that the defendant lived at the residence, stating he visited from "time-to-time." Irvin further denied that the defendant knew about the methamphetamine. Detective McNeese testified that during her police interview, Irvin initially stated she had no idea about the methamphetamine and the legend drug in their bedroom. Irvin subsequently stated that she believed Dantin had hidden the methamphetamine in the jacket pocket.

Detective Nicholas Knight, who at the time of the offense was a detective with the St. Tammany Parish Sheriff's Office Narcotics Task Force, testified that he interviewed the defendant on May 24, 2017, while investigating an unrelated offense. At the onset of the interview, the defendant was advised of his Miranda[10] rights. During the interview, the defendant, in pertinent part, confirmed that he stayed at two residences and that one of them was located on the south side of town, where he stayed with Irvin.[11] When asked who else was living at the residence with him and Irvin, the defendant stated, "Mike, Rick, [and] Ms. Kristie [Smith]."

Smith was still residing at the Brookwood Drive residence at the time of trial. She testified that Dantin, the defendant (whom she called Perrell), and Irvin lived there with her. Smith further testified that the defendant and Irvin had been living there for six to eight months prior to the offenses, and the defendant was there the majority of the time. She noted that she and the defendant sometimes had conflicts due to his having friends over who she considered strangers. She explained that she did not want strange people around her children, who also lived there. She added, "And then he would leave for a couple of days then come back

---

[10]Miranda v. Arizona, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612, 16 L. Ed. 2d 694 (1966).
[11]Detective Knight testified that the defendant was referencing the residence at issue in this case on Brookwood Drive as the one he was staying at with Irvin.

9

and everything would be okay for a couple weeks and it would happen, multiple times." When asked if she was using methamphetamines at the time of the offenses, Smith stated, "I had been off of it, did before, but off of it." Regarding the defendant and Irvin's bedroom, Smith stated that it was their private area. She added, "I don't like them to come into my bedroom, so I would not go into their bedroom without permission. It is just the way I am." She denied placing methamphetamine in the defendant and Irvin's room or giving any methamphetamine to them to hide.

We find that the evidence presented provided a sufficient basis upon which the jury could have inferred that the defendant was aware of the presence of the methamphetamine and the legend drug in the bedroom and that he exercised dominion and control sufficient to constitute joint constructive possession. The State presented overwhelming evidence that the defendant lived at the residence on Brookwood Drive and shared the bedroom in question with Irvin. In addition to the drugs at issue, drug paraphernalia, including a marijuana grinder and a digital scale, was located in the same bedroom. Considering the consistent statements by Dantin and Smith regarding the bedroom, the State established that the defendant and Irvin exercised full access, use, and control over the bedroom where the drugs were found. By contrast, Dantin and Smith testified they would not enter the bedroom without permission from, or in the absence of, the defendant or Irvin. Further, while Dantin and Smith denied having any knowledge of the methamphetamine and promethazine located in the bedroom, Dantin readily admitted to possessing items found in the common area of the home. The defendant did not claim to have nor did he provide the officers with a prescription for the promethazine. Through witness testimony and closing arguments, the jury was made aware of the hypotheses of innocence urged by the defendant, i.e., that he was not aware of the drugs, that he did not live at the residence, and that he and

Irvin shared the bedroom where the drugs were found only when he visited her from time to time. The verdicts indicate that the jury rejected these hypotheses. In reviewing the evidence, we cannot say that the jury's determination was irrational under the facts and circumstances presented to them. See Ordodi, 946 So. 2d at 662.

A court of appeal impinges on a fact finder's discretion beyond the extent necessary to guarantee the fundamental protection of due process of law in accepting a hypothesis of innocence that was reasonably rejected by the fact finder. See State v. Mire, 2014-2295 (La. 1/27/16), 269 So. 3d 698, 700-01 (per curiam); see also State v. Calloway, 2007-2306 (La. 1/21/09), 1 So. 3d 417, 418 (per curiam). After a thorough review of the record, we are convinced that a rational trier of fact, viewing the evidence presented in this case in the light most favorable to the State, could find that the State proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all of the elements of possession of methamphetamine and a legend drug without a prescription or order.

Accordingly, we find no merit in assignment of error number one.

**ASSIGNMENT OF ERROR NUMBER TWO**

In assignment of error number two, the defendant argues that the trial court erred in admitting the videotaped interview of the defendant by Detective Knight pertaining to another investigation, wherein the defendant confirmed that he lived with Irvin at the residence in question. He contends that the video was prejudicial and repetitious. He notes that he was handcuffed and wearing prison clothing at the time of the interview, arguing that his presumption of innocence was impaired. Further, the defendant contends that the interview was unnecessary as the State had already presented ample evidence that he lived at the residence with Irvin.

Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or

11

less probable than it would be without the evidence. LSA-C.E. art. 401. All relevant evidence is admissible, except as otherwise provided by positive law. Evidence which is not relevant is not admissible. LSA-C.E. art. 402. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, or waste of time. LSA-C.E. art. 403. As to questions of relevancy, much discretion is vested in the trial court. Such rulings will not be disturbed on appeal in the absence of a showing of manifest abuse of discretion. State v. Schleve, 99-3019 (La. App. 1st Cir. 12/20/00), 775 So. 2d 1187, 1199, writs denied, 2001-0210 (La. 12/14/01), 803 So. 2d 983 & 2001-0115 (La. 12/14/01), 804 So. 2d 647, cert. denied, 537 U.S. 854, 123 S. Ct. 211, 154 L. Ed. 2d 88 (2002).

It is well settled that before the State may introduce an inculpatory statement or confession into evidence, it must affirmatively show that the statement was free and voluntary and not the result of fear, duress, intimidation, menace, threats, inducements, or promises. LSA-R.S. 15:451; LSA-C.Cr.P. art. 703(D); State v. Anderson, 2006-2987 (La. 9/9/08), 996 So. 2d 973, 994, cert. denied, 556 U.S. 1165, 129 S. Ct. 1906, 173 L. Ed. 2d 1057 (2009). The State must prove that the accused was advised of his Miranda rights and voluntarily waived those rights in order to establish the admissibility of a statement made during custodial interrogation. State v. Scarborough, 2018-1791 (La. 11/14/18), 256 So. 3d 265, 265-66 (per curiam). A court must look to the totality of the circumstances surrounding the confession to determine its voluntariness. State v. Manning, 2003-1982 (La. 10/19/04), 885 So. 2d 1044, 1075, cert. denied, 544 U.S. 967, 125 S. Ct. 1745, 161 L. Ed. 2d 612 (2005).

Although the defendant did not file a motion to suppress the statement at issue, he did object at trial to the interview being played before the jury. In doing

12

so, defense counsel objected on the grounds that the interview took place a month after the instant offense, noting that the defendant stated that he lived at the residence at issue in this case at some point in time. The defense counsel further stated that the "point of time" was "about a month apart." The defendant did not assert any other basis for his objection. The State noted that it would only play a portion of the interview, noting that the offense being investigated would not be mentioned. After the trial court's ruling, a second bench conference took place wherein the State informed the trial court that defense counsel wanted to play the entire interview. The defense counsel noted that the jury was already aware of the defendant's other charge, as it was mentioned in Irvin's statement, admitted by the defense.[12] The trial court ruled to limit the interview to twelve minutes, as initially indicated by the State.

At the outset, we note that a new ground for objection cannot be raised for the first time on appeal. The basis or ground for the objection must be sufficiently brought to the attention of the trial court to allow it the opportunity to make the proper ruling and prevent or cure any error. A defendant is limited on appeal to the grounds for the objection that were articulated at trial. See LSA-C.Cr.P. art. 841 and LSA-C.E. art. 103(A)(1); see also State v. Young, 1999-1264 (La. App. 1st Cir. 3/31/00), 764 So. 2d 998, 1005. As the defendant did not raise them below, he is precluded from asserting the arguments raised on appeal. Nevertheless, as noted, the record shows that the defendant was fully advised of his rights and voluntarily waived his rights at the time of the statement. As further noted by defense counsel, the jury was already aware that the defendant was being investigated in another case. Moreover, as the defendant concedes, the recording was cumulative to other trial testimony indicating that he lived at the residence

---

[12]While the defense counsel inadvertently referenced "Kristie's statement" when noting that the jury already knew about the defendant's other case, the defense actually admitted the transcript of testimony by Samantha Irvin, not Smith, from the unrelated case.

with Irvin. Accordingly, any error in the admission of the brief portion of the recorded interview of the defendant was harmless beyond a reasonable doubt. See LSA-C.Cr.P. art. 921; see also Schleve, 775 So. 2d at 1199-1200.

Thus, assignment of error number two also lacks merit.

## ASSIGNMENT OF ERROR NUMBER THREE

In assignment of error number three, the defendant contends that the State's closing argument was improper. He first identifies the portion of the closing in which the State indicated that defense counsel lied to the jury. He specifically notes that although defense counsel's objection was sustained after the prosecutor indicated that defense counsel had lied to the jury regarding the defendant's residency, thereafter, the State again suggested that defense counsel lied. He further argues that the State, by focusing on the broader issue of drug use in St. Tammany Parish, improperly diverted the jury's attention from its duty to decide the case based on the evidence. The defendant argues that the State caused the jury to return a verdict based on their perceived duty to protect the community from drug users rather than the evidence presented. The defendant concedes that defense counsel did not object to this portion of the State's closing argument, but notes that the Louisiana Supreme Court has instructed that errors that affect the substantial rights of the accused are reviewable by an appellate court even absent contemporaneous objection. The defendant concludes that the convictions should be vacated.

Closing arguments in criminal cases should be restricted to the evidence admitted, to the lack of evidence, to conclusions of fact that may be drawn therefrom, and to the law applicable to the case. Further, the State's rebuttal shall be confined to answering the argument of the defendant. See LSA-C.Cr.P. art. 774. The trial judge has broad discretion in controlling the scope of closing argument. State v. Mitchell, 2016-0834 (La. App. 1st Cir. 9/21/17), 231 So. 3d

14

710, 719, writ denied, 2017-1890 (La. 8/31/18), 251 So. 3d 410. Upon request of the defendant, the court may, in its discretion, grant a mistrial or an admonishment, premised upon argument by opposing party that is irrelevant or immaterial and of such a nature that it might create prejudice against defendant in the mind of the jury. LSA-C.Cr.P. arts. 770 and 771.

Prosecutors are allowed wide latitude in choosing closing argument tactics. State v. Patton, 2010-1841 (La. App. 1st Cir. 6/10/11), 68 So. 3d 1209, 1221. The State should avoid personal attacks on defense counsel and trial strategy. State v. Jones, 2015-0123 (La. App. 4th Cir. 12/2/15), 182 So. 3d 251, 279, writ denied, 2016-0027 (La. 12/5/16), 210 So. 3d 810. However, such statements generally do not rise to the level that would merit reversal of conviction. See State v. Dabney, 2015-0001 (La. App. 4th Cir. 9/9/15), 176 So. 3d 515, 527, 529, writ denied, 2015-1852 (La. 10/17/16), 208 So. 3d 374 (holding that "instances where the State attacked defense strategy and tactics, branded defense counsel a liar and not worthy of belief, and suggested that the defendant may have killed someone in the past" did not require reversal "[i]n light of the traditional breadth accorded the scope of closing argument by the courts of this state"). Even if the prosecutor exceeds the bounds of proper argument, a reviewing court will not reverse a conviction if not "thoroughly convinced" that the argument influenced the jury and contributed to the verdict. Patton, 68 So. 3d at 1221.

In the instant case, the defendant references the following portions of the State's closing argument referring to defense counsel:

> Now, Mr. Craig is a very skilled attorney and we never know what is going to be said in court, what we will have to defend against until we get here and what did we hear?
> We heard that Perrell didn't even live there. So I ask you this, if the truth will set you free why did he lie to you about that? Why does he tell you that Perrell didn't live there? Perrell's clothes were there. Perrell's girlfriend stayed in that room. Perrell's Louisiana Purchase card was in that room...

15

Defense counsel subsequently objected to the characterization of his opening statement as a lie. After the State denied calling defense counsel a liar, the trial court instructed the State to "clear it up." The State then continued as follows, "What I meant to say before is why would the defense be a lie? Why would the defense try to present evidence to you that Perrell didn't live in that house when that clearly is not true?" No further objections were made.

The defendant concedes that there was no objection to the portion of the State's rebuttal argument wherein the State suggested that the prosecution was responsible for the State of Louisiana and the parish. Insofar as the necessity of an objection to preserve these issues for appellate review, the defendant appears to be relying upon Federal Rule of Criminal Procedure 52(b), which provides that "A plain error that affects substantial rights may be considered even though it was not brought to the court's attention." While federal law provides for plain error, Louisiana law does not. The Federal Rules of Criminal Procedure are not applicable in the instant case. Howard, 258 So. 3d at 83-84; State v. Rubens, 2010-1114 (La. App. 4th Cir. 11/30/11), 83 So. 3d 30, 52-53, writs denied, 2012-0374 (La. 5/25/12), 90 So. 3d 410 & 2012-0399 (La. 10/12/12), 99 So. 3d 37, cert. denied, 568 U.S. 1236, 133 S. Ct. 1595, 185 L. Ed. 2d 591 (2013). As stated above, the transcript of the trial reflects that the defendant failed to contemporaneously object or make a motion for mistrial on the basis of the prosecutor's statement during the rebuttal. Thus, because that claim was not preserved for appellate review, the defendant may not raise it on appeal. See LSA-C.Cr.P. art. 841; State v. Taylor, 93-2201 (La. 2/28/96), 669 So. 2d 364, 367-69, cert. denied, 519 U.S. 860, 117 S. Ct. 162, 136 L. Ed. 2d 106 (1996); State v. Palmer, 2000-0216 (La. App. 1st Cir. 12/22/00), 775 So. 2d 1231, 1236, writs denied, 2001-0211 (La. 1/11/02), 807 So. 2d 224 & 2001-1043 (La. 1/11/02), 807 So. 2d 229.

Regarding the defendant's complaint of the State referring to defense counsel as a liar, we note that during jury instructions, the trial court informed the jury that statements of counsel are not evidence. As the defendant concedes, the trial court also informed the jury that opening and closing arguments are not to be considered as evidence. We further note that credit must be given to the "good sense and fair-mindedness of the jurors who heard the evidence" at trial. State v. Mills, 2013-0573 (La. App. 1st Cir. 8/27/14), 153 So. 3d 481, 496, writs denied, 2014-2027 (La. 5/22/15), 170 So. 3d 982 and 2014-2269 (La. 9/18/15), 178 So. 3d 139. The comments at issue herein were in response to the hypothesis of innocence presented at trial. Despite ample evidence otherwise, the defense attempted to show that the defendant did not live at the residence in question. Therefore, the remarks are arguably within the scope of LSA-C.Cr.P. art. 774. Moreover, we are not "thoroughly convinced" the comments, even if improper, contributed to or influenced the verdict considering the entirety of the record. We note that defense counsel did not request an admonishment.

Thus, in accordance with the above, insofar as it is not precluded, assignment of error number three lacks merit.

## ASSIGNMENT OF ERROR NUMBER FOUR

In assignment of error number four, the defendant argues that the trial court erred in failing to respond to the jury's request to view the exhibits. In arguing that it is likely that the jury was confused by Irvin's guilty plea to possession of the methamphetamine found in the jacket pocket and the legend drug found on the nightstand, he notes that the jury also asked to be re-instructed on "jointness." He argues that while the trial court recharged the jury on joint possession, the trial court erred in stopping there. Noting that the jury specifically requested to see "photos" and "other evidence," he argues that the trial court should have inquired as to what specific photographs and other evidence the jury wanted to view. In

arguing that the trial court failed to carry out its duty to determine the true source of confusion or need for information, the defendant notes that jurors are untrained laymen. The defendant concedes that the record is devoid of an objection in this regard, but argues this issue should be reviewed on appeal absent a contemporaneous objection as his due process rights were violated by the trial court's failure to respond to the jury's request to view the photos and evidence.

Pursuant to LSA-C.Cr.P. art. 793, which prohibits the use of written material during deliberations, in general, a juror must rely upon his memory in reaching a verdict. Under the plain language of Article 793, a videotape or a photograph, is neither testimony nor written evidence and is not excluded by Article 793. Hence, granting a jury's request to see a photograph after it retired to deliberate is not an abuse of the court's statutory discretion. See State v. Davis, 92-1623 (La. 5/23/94), 637 So. 2d 1012, 1025, cert. denied, 513 U.S. 975, 115 S. Ct. 450, 130 L. Ed. 2d 359 (1994); State v. Cespedes, 2017-1087 (La. App. 1st Cir. 12/29/17), 241 So. 3d 342, 349, writ denied, 2018-0263 (La. 12/17/18), 259 So. 3d 340.

In this case, while the jury sent a note asking to see the photographs and other evidence, there is nothing in the record to reveal whether the request was granted or not. After the jury asked for a definition of "jointness," the trial court reinstructed the jury on the elements of the offenses, constructive possession, and joint possession. The trial court then asked if there was anything further that the jury would like the court to read, and there was no response reflected in the transcript. Neither the jury nor defense counsel requested that the jury receive additional instructions. See LSA-C.Cr.P. arts. 801 and 808. Further, defense counsel failed to assert a contemporaneous objection to the lack of any further instruction to the jury by the trial court. The failure to raise a contemporaneous objection to a ruling of the court constitutes a waiver of that objection. LSA-C.Cr.P. art. 841; State v. Calvert, 2007-1910 (La. App. 1st Cir. 6/6/08), 2008 WL

18

2332323, at *3, <u>writ</u> <u>denied</u>, 2008-1602 (La. 4/17/09), 6 So. 3d 784. Moreover, the defendant has failed to show he suffered any prejudice from the trial court's ruling because the jury had the opportunity to view the photographs and other exhibits during the trial.

Accordingly, we find no merit in assignment of error number four.

## ASSIGNMENT OF ERROR NUMBER FIVE

In assignment of error number five, the defendant argues that the sentences are excessive. He notes that he was convicted of possessing one pill, the legend drug of promethazine, for which he was sentenced to ten years imprisonment to be served consecutive to the four-year sentence imposed on the conviction of possessing methamphetamine. He further notes that had he been charged with possessing a legend drug fifteen months later, under the revised law, the offense would have been a misdemeanor as opposed to a felony. The defendant notes that the revision of LSA-R.S. 40:1060.13 is a continuation of the Louisiana Justice Reinvestment Reforms enacted by the legislature to decrease the penalty for nonviolent drug offenses. He further notes that courts have made exceptions to the presumption in Louisiana that the statute in effect at the time of the commission of an offense governs the applicable punishment.

The defendant contends that his sentences shock the sense of justice. He argues that he was penalized for exercising his right to trial and denying the allegations of the habitual offender bill of information instead of accepting the State's offer of a fourteen-year sentence in exchange for a guilty plea to being a second felony offender. He argues that the fourteen-year jail term imposed in this case makes no measurable contribution to acceptable penal goals, and therefore, is nothing more than needless imposition of pain and suffering. He notes that as a general rule, maximum sentences should be reserved for the worst offenders and the worst offenses. Stating that he possessed a "bare minimum" amount of a

19

narcotic and one pill of an antihistamine legend drug, he argues that he cannot be considered the "worst of the worst."

Article I, Section 20 of the Louisiana Constitution prohibits the imposition of excessive punishment. Although a sentence may be within statutory limits, it may violate a defendant's constitutional right against excessive punishment and is subject to appellate review. State v. Sepulvado, 367 So. 2d 762, 767 (La. 1979); State v. Peters, 2017-0208 (La. App. 1st Cir. 11/1/17), 233 So. 3d 97, 99. A sentence is constitutionally excessive if it is grossly disproportionate to the severity of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. See State v. Hurst, 99-2868 (La. App. 1st Cir. 10/3/00), 797 So. 2d 75, 83, writ denied, 2000-3053 (La. 10/5/01), 798 So. 2d 962. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. A trial court is given great discretion in the imposition of sentences within statutory limits, and the sentence imposed by it should not be set aside as excessive in the absence of manifest abuse of discretion. State v. Collins, 2009-1617 (La. App. 1st Cir. 2/12/10), 35 So. 3d 1103, 1108, writ denied, 2010-0606 (La. 10/8/10), 46 So. 3d 1265.

Louisiana Code of Criminal Procedure article 894.1 sets forth the factors for the district court to consider when imposing sentence. While the entire checklist of Article 894.1 need not be recited, the record must reflect that the district court adequately considered the criteria. In light of the criteria expressed by article 894.1, a review for individual excessiveness should consider the circumstances of the crime and the trial court's stated reasons and factual basis for its sentencing decision. State v. Brown, 2002-2231 (La. App. 1st Cir. 5/9/03), 849 So. 2d 566, 569. Remand is unnecessary when a sufficient factual basis for the sentence is

shown.  State v. Lanclos, 419 So. 2d 475, 478 (La. 1982); State v. Graham, 2002-1492 (La. App. 1st Cir. 2/14/03), 845 So. 2d 416, 422.

In accordance with the laws in effect at the time of the offenses, herein, on count one, the defendant was exposed to a sentence range of not more than five years imprisonment with or without hard labor and a non-mandatory fine of not more than five thousand dollars.  LSA-R.S. 40:967(C)(2) (prior to amendment by 2018 La Acts, No. 677, § 1).  On count two, the defendant was exposed to a sentencing range of not more than five years imprisonment, with or without hard labor, and a non-mandatory fine of not more than five thousand dollars.  LSA-R.S. 40:1060.13(C) (prior to amendment by 2018 La Acts, No. 203,§ 1).  As a third felony offender, the defendant faced an enhanced sentencing range on count one of three years and four months to ten years imprisonment, and an enhanced sentencing range on count two of three years and four months to ten years imprisonment, with or without hard labor.  LSA-R.S. 15:529.1(A)(3)(a) (prior to amendment by 2017 La Acts, Nos. 257 and 282, §§ 1) ("not less than two-thirds of the longest possible sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction").  See also LSA-R.S. 15:529.1(K) (added by 2018 La Acts, No. 542 § 1). In this case, the trial court imposed four years imprisonment at hard labor on count one and ten years imprisonment at hard labor on count two.

In State v. Wright, 384 So. 2d 399, 401 (La. 1980), the Louisiana Supreme Court held that "the law in effect at the time of the commission of the offense is determinative of the penalty which the convicted accused must suffer."  This has been the rule of law consistently applied by the courts of this state.  State v. Martin, 2001-2986 (La. App. 1st Cir. 6/21/02), 822 So. 2d 153, 154.  The cases cited by the defendant on appeal are not controlling in the instant case.  In State v. Priest, 2018-518 (La. App. 5th Cir. 2/6/19), 265 So. 3d 993, 1006, writ denied, 2019-0418 (La.

5/20/19), 271 So.3d 201, while the fifth circuit considered changes to the applicable statute in finding the defendant's thirty-year sentence for possession of 400 grams of methamphetamine excessive, the court acknowledged that the amendments were not to be applied retroactively. In State ex rel. Esteen v. State, 2016-0949 (La. 1/30/18), 239 So. 3d 233, 238, the Louisiana Supreme Court allowed resentencing pursuant to the more lenient penalty provisions enacted by the legislature in 2001, which were later declared in LSA-R.S. 15:308(B) to apply retroactively to certain defendants who committed crimes, were convicted, or were sentenced prior to June 15, 2001. As the offenses were committed and the defendant was convicted and sentenced after June 15, 2001, LSA-R.S. 15:308 does not apply to the instant case. Additionally, we note that the holding in State v. Mayeux, 2001-3195 (La. 6/21/02), 820 So. 2d 526, 530-531, also cited by the defendant, was limited to LSA-R.S. 14:98, and the specific statutory language at issue in that case. Finally, we note that it is well settled that sentences must be individualized to the particular offender and to the particular offense committed. State v. Albarado, 2003-2504 (La. App. 1st Cir. 6/25/04), 878 So. 2d 849, 852, writ denied, 2004-2231 (La. 1/28/05), 893 So. 2d 70. Thus, the sentencing comparisons made by the defendant are of little value.

Maximum sentences may be imposed for the most serious offenses and the worst offenders, or when the offender poses an unusual risk to the public safety due to his past conduct of repeated criminality. Albarado, 878 So. 2d at 852. In imposing the sentences, the trial court considered the facts of the instant case and the fact that the defendant's "consistent problems" indicated a long-standing drug problem. The court considered the Article 894.1(B) factors, and recommended drug rehabilitation treatment. We note that the defendant's lengthy criminal record dates back to 1990. On count one, the trial court imposed an enhanced sentence within the lower range of the possible sentences. Moreover, while the defendant

received the maximum prison term for the enhanced sentence on count two, as the trial court noted, the State could have sought a fourth felony habitual offender adjudication in this case. Specifically, in addition to the possession of marijuana, second offense, and possession or introduction of contraband into a penal institution offenses used to support the third-felony habitual offender adjudication, the habitual offender bill of information also lists a predicate conviction of battery on a correctional facility employee. Moreover, the defendant's rap sheet includes numerous arrests, parole revocations, convictions for cocaine, legend drug, marijuana, and other drug offenses, and convictions for simple robbery and illegal possession of stolen things. Further, while the defendant argues that he was penalized for exercising his right to trial, he concedes that the length of the sentences ultimately imposed in this case is equivalent to the length of sentences offered by the State, but rejected by the defendant.

In this case, considering defendant's lengthy criminal record and reduced penalty exposure, we find the four-year enhanced sentence on count one and ten-year enhanced sentence on count two, to run consecutively, are not grossly disproportionate to the severity of the offenses. Therefore, the sentences are not unconstitutionally excessive. We find that the trial court did not err or abuse its discretion in denying the motion to reconsider sentence.

This assignment of error lacks merit.

**CONVICTIONS, HABITUAL OFFENDER ADJUDICATION, AND SENTENCES AFFIRMED.**

NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 KA 0669

STATE OF LOUISIANA

VERSUS

WALTER PERELL FISHER, JR.

**GUIDRY, J., dissents and assigns reasons.**

**GUIDRY, J., dissenting.**

I respectfully dissent from the majority opinion in this matter. The defendant in this matter received consecutive sentences under the Habitual Offender Law of four years for possession of a minimal amount of methamphetamine and a maximum sentence of ten years for possession of one promethazine pill, a legend drug. I recognize that the defendant was a recidivist sentenced under the law in effect at the time of the commission of the offense; however, when considering the facts of this case, the combined sentence of fourteen years shocks the conscious and is a needless imposition of punishment. This is particularly so in light of the fact that the charge for possession of the promethazine pill would have been a misdemeanor rather than a felony had it occurred fifteen months later, pursuant to the continuation of the Louisiana Justice Reinvestment Reforms. Under the facts of the instant case, the defendant is not the worst offender, and possession of one pill and a de minimis amount of a controlled substance are not the worst offenses deserving of consecutive sentences. The maximum enhanced sentence of ten years running consecutive to the four-year sentence violates the prohibition against excessive punishment. See State v. Thompkins, 18-2104, pp. 1-2 (La. 6/17/19), 274 So. 3d 1252, 1253 (per curiam).